424 F.2d 1134
 Harvey L. KERR, Plaintiff-Appellant,
v.
CITY OF CHICAGO, a Municipal Corporation, John Mohan, William Boyd, Wesley Broderson, George Poplaski, Edmund Dobbs and Bruce Thompson, Individually and as Police Officers of the City of Chicago, Jointly and Severally, Defendants-Appellees.
 No. 17345.
 United States Court of Appeals, Seventh Circuit.
 March 11, 1970.
 Rehearing Denied April 7, 1970.
 
 COPYRIGHT MATERIAL OMITTED Elmer Gertz, Chicago, Ill., for appellant.
 Raymond F. Simon, Edmund Hatfield, Chicago, Ill., for appellees.
 Before CUMMINGS and KERNER, Circuit Judges, and GRANT, District Judge.*
 KERNER, Circuit Judge.
 
 
 1
 This is a review of a civil action arising out of a Civil Rights complaint under 28 U.S.C. §§ 1331 and 1343(a), and 42 U.S.C. §§ 1983 and 1988, seeking both compensatory and punitive damages. The matter was tried before a jury and there was a finding for defendants.
 
 
 2
 Plaintiff, Harvey L. Kerr, alleges he was denied a fair trial. He states that the trial court improperly struck portions of the complaint; that the court improperly refused to allow introduction of testimony to prove the civil rights violations; that instructions were improperly refused; that he was not allowed to introduce testimony of the cost of legal services; and that the City of Chicago was improperly dismissed as a party defendant.
 
 
 3
 On June 19, 1963, Harvey Kerr, a black youth, age 17, alleges he was taken from his home at 5:30 a. m. by Chicago Police Officers. The officers, without warrants, informed his parents they did not believe the youth was involved in any crime but wished to interrogate him at the station, and they would return him in time to attend his regular school classes.
 
 
 4
 Kerr states he was placed in a police car and driven to another home where another youth was picked up, and both were taken to the Maxwell Street Police Station some distance from their homes. Kerr was questioned about a burglary and fire in an apartment. He denied any knowledge of the matter, and states he was both kicked and hit by an officer during the interrogation. Both of the youths, after several hours, were taken to Police Headquarters at 11th and State Streets where Kerr was required to take a polygraph examination. He was then returned to the Maxwell Street Station about 11:30 a. m. His mother, who had been searching for him at various stations, arrived at about the same time and was not allowed to speak to him.
 
 
 5
 Shortly after his return to the station, Kerr states he was told he would be allowed to use the washroom and to have food and water if he confessed. Several statements were read to him, after which he made three statements to a court reporter, each of which he signed. He was then allowed the use of facilities, provided food and water, and allowed to see his parents.
 
 
 6
 At about 4:00 p. m. on the same day, he was removed again to Police Headquarters and held without charge. The next morning, June 20, he was taken before a magistrate of the Boys Court, some 27 hours after he was removed from his home. Counsel appeared for him at the hearing and the magistrate bound Kerr over to the Cook County Grand Jury. He was indicted for murder and burglary. Not being allowed bond or bail, he was held for trial until December 13, 1963; at the conclusion of all evidence, the jury was unable to reach a verdict. Kerr continued to be held without any further action until December 2, 1964, when a nolle prosequi was entered.
 
 
 7
 Plaintiff alleges in his complaint that the defendants acted in "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The complaint alleges the following violations of Kerr's civil rights: that for approximately 27 hours he was never brought before a judge, court or magistrate although in session; not charged with a crime; not permitted to make bail or bond; not permitted to contact or obtain counsel and advice; not informed of any formal charges; not informed of his privilege against self-incrimination; not informed of his right to the advice of counsel; and that for 14 hours he was not permitted to eat or use washroom facilities. Additionally, Kerr alleges that he was physically abused and the confession was not voluntarily obtained; and that the polygraph test was taken without his or his parents' consent. The complaint concludes that as a direct and proximate result of these acts of the defendants, the plaintiff suffered pain and injury and mental anguish and seeks judgment therefor.
 
 
 8
 The district court struck various allegations of the complaint and refused to admit evidence concerning the following alleged violations of his civil rights:
 
 
 9
 (a) That plaintiff was forced to submit to a lie detector test without the permission of his parents;
 
 
 10
 (b) That plaintiff was not allowed to see his parents during his detention although his mother was present at the police station in which he was being held;
 
 
 11
 (c) That for 27 hours of detention plaintiff was not:
 
 
 12
 (i) charged with a crime;
 
 
 13
 (ii) allowed to make bail or post bond;
 
 
 14
 (iii) permitted to contact an attorney;
 
 
 15
 (iv) informed of any formal charges placed against him;
 
 
 16
 (v) informed of his privilege against self-incrimination;
 
 
 17
 (vi) informed of his right to the advice of an attorney;
 
 
 18
 (d) That for 14 hours of detention plaintiff was not permitted to contact his family or his friends.
 
 
 19
 The theory of the court was that under the law at the time of arrest and detention of Harvey Kerr, these allegations, even if true, did not constitute a violation of rights, privileges or immunities secured by the Constitution and laws. Since the constitutional rights alleged to be violated were not declared until the Supreme Court's opinion in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966), and since these decisions were held not to be retroactive, Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), the district court held that these allegations failed to state a claim upon which relief could be granted. We disagree.
 
 
 20
 The defendants and the district court have misconstrued plaintiff's allegations of violation of his constitutional rights. Plaintiff claims that his rights were violated by the obtaining of an involuntary confession and the use of this confession to illegally detain the plaintiff for a period of 18 months. Cf. Spano v. New York, 360 U.S. 315, 79 S. Ct. 1202, 3 L.Ed.2d 1265 (1959). To consider whether the confession was voluntary, it is necessary for the jury to be allowed to consider all relevant facts regarding the circumstances under which a confession from the plaintiff was obtained. Lynumn v. Illinois, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963).
 
 
 21
 The court in Williams v. Peyton, 404 F.2d 528, 530-531 (4th Cir. 1968), said "more than twenty years ago, the Supreme Court cautioned that the record must be scrutinized with special care to determine whether a young defendant's confession is voluntary. Haley v. Ohio, 332 U.S. 596, 599, 68 S.Ct. 302, 92 L.Ed. 224. Facts to be considered include the youth of the defendant, the length of his detention without counsel and any failure to send for his parents, or to bring him promptly before a judge of a juvenile court." In Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948), the Supreme Court held a confession was coerced where a 15-year-old black youth was arrested and taken from his home at midnight and questioned by police for five hours without counsel being present.
 
 
 22
 Thus, the jury was entitled to hear the testimony surrounding all the events from the moment Kerr was taken from his home until his indictment by the Grand Jury. All of the acts of commission and omission — the totality of all the circumstances — are of great importance in determining whether plaintiff's confession was coerced in violation of his civil rights and thereby cognizable under 42 U.S.C. § 1983. We conclude that the district court erred in striking the allegations in the complaint and refusing to admit evidence as to those allegations.
 
 INSTRUCTIONS
 
 23
 Various instructions offered by Kerr were refused by the court. The only instructions given to the jury concerning the law involved was a reading of the statute, 42 U.S.C. § 1983, and the reading of the Illinois statute requiring that a person in custody must be taken before the nearest magistrate without delay. We shall discuss the plaintiff's instructions which we have found to have been erroneously refused.
 
 
 24
 The court refused the following instruction:
 
 
 25
 This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. The law is no respecter of persons; all persons stand equal before the law, and are to be dealt with as equals in a court of justice.
 
 
 26
 This instruction is taken haec verbae from Mathes, Jury Instructions and Forms for Federal Civil Cases, 28 F.R. D. 401, 414. In a civil rights action against policemen, such an instruction is necessary in order that the jury properly understands that people employed by the state do not stand in any higher station in the community. Without this instruction, the jury may give a greater weight to the testimony of the policemen and we think it was error to deny the giving of the instruction.
 
 
 27
 The court refused to give the following instructions:
 
 
 28
 In this case you are to determine whether the defendants, or any of them, violated the plaintiff's civil rights. Whether the plaintiff was guilty of a crime at the time of the occurrences testified to in this proceeding is entirely irrelevant and is not to be considered by you in any way in reaching your verdict in this case.
 
 
 29
 An indictment for a crime by a grand jury is nothing more than an accusation of such crime and is not to be considered as being any evidence that plaintiff committed any such crime.
 
 
 30
 Since the jury was told that the plaintiff was indicted by the Grand Jury and his confession in the police station was admitted in evidence, without proper instruction the jury was able to speculate as to the guilt or innocence of the plaintiff in determining the liability of the defendants. However, in a civil rights action alleging the extraction of an involuntary confession, the issue of guilt or innocence is irrelevant and the jury must not be confused. The above instructions are directly in point and the failure to give them was error.
 
 
 31
 It is fundamental that plaintiff is entitled to instruct the jury as to his theory of the case. Embodied in plaintiff's theory is the right of an individual not to be deprived of his liberty without due process of law. 42 U.S.C. § 1983 gives an individual a right to maintain a cause of action against a state official acting outside his authority when the individual's rights have been violated. However, to instruct a jury as to the statute alone, in a manner as complex as a civil rights action, is insufficient to inform the jury as to what are the rights of an individual. A jury cannot be expected to know exactly what rights are guaranteed an individual under the Constitution and the failure to instruct the jury accordingly is error.
 
 
 32
 The plaintiff proposed the following instructions on the rights of the individual and we think it was error to refuse them:
 
 Plaintiff's instruction No. 19:
 
 33
 The statute just outlined to you comprises one of the Civil Rights Acts enacted by the Congress under the Fourteenth Amendment to the Constitution of the United States. The Fourteenth Amendment to the Constitution provides that:
 
 
 34
 "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."
 
 Plaintiff's instruction No. 23:
 
 35
 At all times the plaintiff in this case had the legal right not to be deprived of any liberty protected by the Constitution or laws of the United States, except by due process of law. To be deprived of liberty "without due process of law" means to be deprived of liberty without authority of law. In this respect, this plaintiff has the same legal rights as have the defendants and as all people living in the United States.
 
 Plaintiff's instruction No. 24:
 
 36
 Even a person under arrest has certain liberties that cannot be taken from him, including the liberty to be free from unlawful attacks on his physical being. It has always been the policy of the law to protect the physical integrity of every person from unauthorized violation or interference. So this plaintiff, while under arrest had the right under the Federal Constitution not to be deprived of this remaining liberty without due process of law.
 
 Plaintiff's instruction No. 25:
 
 37
 An arrest by state officers without a warrant, without probable cause is an arrest without due process. Imprisonment pursuant to such an arrest is also without due process.
 
 Plaintiff's instruction No. 28:
 
 38
 Due process of law in criminal cases means, among other things, that no one can be punished until he has been convicted and sentenced by a court with authority to act in his case. In other words, a police officer does not have the authority to punish a person in the process of arresting him for commission of a crime, even if he observed the person committing the crime. A police officer or sheriff's deputy does not have the authority to punish a prisoner for the crime for which he is awaiting trial, or for which he is serving a sentence. Punishment can only be lawful if it is based on the sentence of a court following a judgment of guilty.
 
 Plaintiff's instruction No. 31:
 
 39
 If you should find, from a preponderance of the evidence, that the defendants acted beyond the bounds of their lawful authority under state law, at the time and place alleged, then you may further find that the defendants did, "without due process of law," deprive the plaintiff of liberty secured to him and protected by the Constitution and laws of the United States. And if you so find, then you must proceed to determine the amount of the actual or compensatory damages suffered or sustained by the plaintiff, as a proximate result of the defendants' conduct.
 
 Plaintiff's instruction No. 32:
 
 40
 If, however, you should find from a preponderance of the evidence in the case that the defendants acted within the bounds of their lawful authority then you should return a verdict in favor of the defendants; for, as previously stated, if the defendants acted within the limits of their lawful authority under state law, then the defendants did not deprive the plaintiff of any liberty "without due process of law."
 
 
 41
 Defendants specifically object to plaintiff's instruction number 25 as not being a proper statement of the law in Illinois as set out in Ill.Rev.Stat.1963, ch. 38, ¶ 107-2. While Illinois law may have been different, the Supreme Court in Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), held that an arrest without a warrant and without probable cause was unlawful. Further, failure to object to the arrest does not waive an individual's right to complain that his liberty was denied without due process as contended by the defendants.
 
 
 42
 The district court also refused the following instruction to the jury:
 
 
 43
 The fact that the defendants had no specific intent or purpose to deprive plaintiff of his civil rights will not absolve them from liability if they did in fact deprive him of those rights.
 
 
 44
 This instruction is a proper statement of the law, Stringer v. Dilger, 313 F.2d 536 (10th Cir. 1963); Basista v. Weir, 340 F.2d 74 (3d Cir. 1965), and we do not think the giving of such instruction would confuse the jury but, instead, would be helpful.
 
 
 45
 The following instruction as to the meaning of "under color of law" was also refused:
 
 
 46
 Acts are done under color of law of a state when state officials act within the limits of their lawful authority. But acts are also done "under color of law" when state officials act outside the limits of their lawful authority while pretending to act in the performance of their official duties; that is to say, it is an unlawful act for an official to abuse or misuse the power he has been given as an official. And it is an unlawful act under color of law if the act could only have been done by an official exercising his powers outside the bounds of his lawful authority. The phrase "under color of law" applies to acts done under color of any state law or county or city ordinance, or any regulation issued under a state law or ordinance or acts done under any state or local custom.
 
 
 47
 The instruction contains a proper statement of the law. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492. (1961); Williams v. United States, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1951); United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941); and Marshall v. Sawyer, 301 F.2d 639 (9th Cir. 1962), and we think the instruction was necessary.
 
 
 48
 The district court also refused the following instructions:
 
 
 49
 If you find from a preponderance of the evidence in the case: (1) that the defendants used greater force on the plaintiff than the defendants believed was reasonably necessary in order to accomplish the lawful purpose intended, or (2) that the defendants used more force on the plaintiff than would have appeared to a reasonable person, in like circumstances, to be necessary, in order to accomplish the lawful purposes intended, or (3) that the defendants acted as they did toward plaintiff, not to perform their lawful duties but prompted by another unlawful motive, then you may find that the defendants acted unlawfully, contrary to the law of the State of Illinois.
 
 
 50
 Whether or not the force used in making an arrest was unnecessary, unreasonable or violent must be considered in light of all the circumstances and the standard to be applied is that of the conduct of an ordinary prudent person under existing circumstances.
 
 
 51
 Without these instructions, the jury could not properly evaluate whether the acts of the defendants were within their lawful authority, and we think it was error to refuse these instructions.
 
 EVIDENCE OF DAMAGES
 
 52
 The court refused to allow any testimony by Kerr's parents of the payment of attorneys' fees that were expended by them on behalf of Kerr in the criminal proceedings. Defendants contend that under § 1983, only those funds expended by "every person" who alleges the harm and damages arising from civil rights violations may recover for the funds expended as damages. Section 1983 makes no reference to funds expended. The "every person" identified in the section refers to the person who caused the violation of the rights guaranteed, and not the party who has been injured. It would be unrealistic to hold that any minor who is without funds or property could not recover monies expended on his behalf by his parents when in need of professional help. Certainly, defendants are not entitled to a windfall because the plaintiff himself did not pay the bill.
 
 
 53
 The defendants also contend that attorneys' fees expended in a criminal action are not recoverable in a civil rights action. We disagree. In Basista v. Weir, 340 F.2d 74 (3d Cir. 1965), the court held that federal common law controls the question of damages in civil rights actions with the purpose being to vindicate the civil rights of the individual. 340 F.2d at 85-86. A plaintiff in a civil rights action should be allowed to recover the attorneys' fees in a state criminal action where the expenditure is a foreseeable result of the acts of the defendant. Cf. Brooks v. Moss, 242 F. Supp. 531 (W.D.S.C.1965); McArthur v. Pennington, 253 F.Supp. 420 (E.D. Tenn.1963).
 
 CITY OF CHICAGO AS A PARTY
 
 54
 Plaintiff claims that the district court erred in dismissing the complaint against the City of Chicago under pendent jurisdiction. United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). We agree with the defendant City of Chicago that plaintiff's claim for indemnity under Ill.Rev.Stat. ch. 24 § 1-4-5 and Ill.Rev.Stat. ch. 85 § 2-302 should not be heard in federal court. Claims for indemnity are separate and apart from tort claims and are not consolidated with the tort claim unless there is another contested issue such as the duty of the indemnitor to defend. See Cunningham Bros., Inc. v. Bail, 407 F.2d 1165 (7th Cir. 1969), cert. denied 395 U.S. 959, 89 S.Ct. 2100, 23 L. Ed.2d 745.
 
 
 55
 Defendants' motion to dismiss the appeal for failure to comply with Federal Rule of Appellate Procedure 10 by not designating the entire transcript as the record in this case is denied.
 
 
 56
 For the foregoing reasons this case is reversed and remanded to the district court for further proceedings consistent with this opinion except that the dismissal of the City of Chicago as a party is affirmed.
 
 
 57
 Affirmed in part and reversed and remanded with directions.
 
 
 
 Notes:
 
 
 *
 Chief Judge Robert A. Grant is sitting by designation from the United States District Court for the Northern District of Indiana