**Roy M. ROBERTS, Appellant,**

v.

**Sgt. George HOLLOCHER; Det. Al Napier, acting with others; Det. Gregory Skinner, Appellees.**

**No. 81–1064.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 18, 1981.
Decided Nov. 24, 1981.

* The Hon. Ronald N. Davies, Senior United States District Judge for the District of North Dakota, sitting by designation.

Leonard D. Vines, argued, Vines, Kreuter & Kruger, P.C., St. Louis, Mo., for Roy M. Roberts, appellant.

Joseph R. Niemann, City Counselor, John J. Fitzgibbon, Associate City Counselor,

Francis M. Oates, Asst. City Counselor, argued, St. Louis, Mo., for appellees.

Before STEPHENSON and McMILLIAN, Circuit Judges, and HANSON,* Senior District Judge.

McMILLIAN, Circuit Judge.

Roy M. Roberts appeals from a judgment entered in the district court[1] based on a jury verdict denying appellant's action for damages for alleged deprivation of his civil rights under 42 U.S.C. § 1983. In this appeal Roberts contends that the district court erred in (1) failing to give an offered instruction advising the jury to consider the case as an action between persons of equal standing and equal worth in the community, (2) admitting evidence concerning the last time Roberts took drugs prior to the incidents alleged in the complaint, (3) admitting into evidence a photograph of a sawed-off shotgun, and (4) refusing to admit into evidence the diagnosis of a physician who treated Roberts after the incidents. We affirm the district court decision.

Roberts' § 1983 action is based upon the following incident. On April 9, 1979, defendant police officers Hollocher and Napier arrested Roberts at his home on a suppressed indictment. A search of the apartment revealed a sawed-off shotgun hidden in the bathroom wall. There is no dispute that Roberts was struck by Officers Hollocher and Napier in the course of the arrest. Roberts was taken by ambulance to the hospital for x-rays and treatment, then to the narcotics division of the police station to be booked. While Officer Skinner was attempting to handcuff Roberts at the station, another scuffle ensued. Officer Skinner testified that Roberts swung at him. Skinner responded by striking Roberts three or four times in the face in an effort to get control of him. Following this incident, Roberts was again taken to the hospital for treatment.

Roberts first alleges that the district court erred in refusing to give his proffered instruction advising the jury to consider the case as an action between persons of equal standing and equal worth in the community. Specifically, Roberts offered the following instruction:

This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. The law is no respecter of persons; all persons stand equal before the law and are to be dealt with as equals in a court of justice.[2]

The district court declined to give the instruction as such and instead instructed: "You must not be influenced in any degree by any personal feeling of sympathy for or prejudice against any party to this suit, for each party is entitled to the same fair and impartial consideration." The district court further instructed the jury:

Members of the jury, it is your duty to decide the issues submitted to you impartially and you should not permit passion or prejudice or sympathy to enter into your deliberation in the slightest degree. You will approach and determine the issues submitted to you honestly, fairly and impartially, without any regard to who the parties plaintiff and defendant are.

■ Roberts contends that the instructions given were general instructions dealing with the province of the jury and did not contain the cautionary reminder of equality necessary in cases dealing with police brutality. While we approve generally of the use of Roberts' proffered instruction in § 1983 actions, we find no reversible

---

* The Honorable William C. Hanson, United States Senior District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

2. Mathes, *Jury Instructions and Forms for Federal Civil Cases*, 28 F.R.D. 401, 414 (1961); E. Devitt & C. Blackmar, Federal Jury Practice & Instructions ¶ 71.04 (3d ed. 1977).

error in the district court's refusal to give the instruction in the present case.

 The district court need not use the exact language of a requested instruction in order to avoid error so long as the instructions given are accurate and fair to both parties. *Leathers v. United States*, 471 F.2d 856, 863 (8th Cir.), *cert. denied*, 412 U.S. 932, 93 S.Ct. 2754, 37 L.Ed.2d 161 (1973). When a portion of a jury instruction is assigned as error, the reviewing court must look to the instructions as a whole. *Fields v. Chicago, Rock Island & Pacific Ry.*, 532 F.2d 1211, 1213 (8th Cir. 1976); *Barnes v. Omark Industries*, 369 F.2d 4, 11 (8th Cir. 1966); *Weir v. Simmons*, 357 F.2d 70, 74 (8th Cir. 1966). *Accord, Gardner v. Joyce*, 482 F.2d 283 (5th Cir.) (per curiam), *cert. denied*, 414 U.S. 1096, 94 S.Ct. 731, 38 L.Ed.2d 555 (1973).

In *Kerr v. City of Chicago*, 424 F.2d 1134 (7th Cir.), *cert. denied*, 400 U.S. 833, 91 S.Ct. 66, 27 L.Ed.2d 64 (1970), the Seventh Circuit held that the district court erred in refusing the same instruction offered here by Roberts in a civil rights suit. The only instruction given the jury in *Kerr* was a reading of the applicable statute, 42 U.S.C. § 1983. In *Kerr*, the court held that an instruction such as that offered in *Kerr* is necessary in a civil rights action against policemen in order for the jury to properly understand that persons employed by the state do not stand in any higher station in the community, nor does their testimony carry greater weight. 424 F.2d at 1138–39. In the present case we find no prejudicial error because the district court essentially covered the subject area in different language. *Putman v. Gerloff*, 639 F.2d 415, 422 (8th Cir. 1981). Here, unlike *Kerr*, the cautionary instructions, when viewed as a whole, accomplished the same purpose as Roberts' instruction.

Roberts next argues that the district court erroneously permitted cross-examination concerning Roberts' use of drugs. On direct examination Roberts had testified that he was not on drugs at the time of the alleged incidents with the police. During cross-examination, the district court permit-

ted questions, over objections, concerning the last time he had taken drugs, in what form and what amount. Roberts argues that these questions had no significant probative value, allowed the jury to assume that he was addicted to drugs, and as such should not have been admitted under Rule 403 of the Federal Rules of Evidence as being unfairly prejudicial.

 We disagree. The district court has broad discretion in setting the limits of cross-examination. *United States v. Drake*, 542 F.2d 1020 (8th Cir.), *cert. denied*, 429 U.S. 1050, 97 S.Ct. 762, 50 L.Ed.2d 766 (1977); *Leeper v. United States*, 446 F.2d 281, 288 (10th Cir.), *cert. denied*, 404 U.S. 1021, 92 S.Ct. 695, 30 L.Ed.2d 671 (1972); Fed.R.Evid. 611(b). Cross-examination may embrace any matter germane to direct examination, qualifying or destroying it, or tending to elucidate, modify, explain, contradict or rebut testimony given by the witness. *Leeper . v. United States, supra*, 446 F.2d at 288. Here we find no abuse of discretion. The cross-examination concerning Roberts' use of drugs was permissible in light of his previous testimony. The questions were relevant to Roberts' physical state at the time of the alleged incidents and to his ability to accurately recall those incidents.

Roberts raises a similar objection to the admission into evidence of a photograph of a sawed-off shotgun. Roberts maintains that the photograph had no relevance to the issue of whether he was beaten by the police but was instead extremely prejudicial and inflammatory.

Roberts testified that he had on a previous occasion threatened Officer Skinner with a sawed-off shotgun. The police officers testified that they had information that there was a shotgun in Roberts' apartment. A search revealed a shotgun hidden in the bathroom wall. Roberts claimed that he was struck with a sawed-off shotgun but denied that the gun used was the same gun found in his apartment. He insisted that the officers brought another sawed-off shotgun with them to his apartment.

■ The admission of photographs is a matter within the discretion of the district court. *Giblin v. United States*, 523 F.2d 42, 44 (8th Cir.), *cert. denied*, 424 U.S. 971, 96 S.Ct. 1470, 47 L.Ed.2d 739 (1976); *United States v. Delay*, 500 F.2d 1360, 1366 (8th Cir. 1974). The test to be applied is whether the prejudicial effect outweighs the probative value of the evidence. *Giblin v. United States, supra*, 523 F.2d at 44.

■ We find no error in the admission of this evidence. Roberts testified on direct examination to the use of a shotgun on a previous occasion. He also testified that he was struck by a sawed-off shotgun. Because the gun found in Roberts' apartment was unavailable at the trial,[3] the photograph may have helped eliminate some of the confusion surrounding the conflicting testimony. The possible prejudicial effect of linking Roberts with the sawed-off shotgun had already arisen from his own testimony. There was no abuse of discretion in admitting the photograph.

Finally, Roberts argues that the district court erred in refusing to admit the diagnosis of a physician who treated Roberts at the hospital emergency room. The hospital records of Roberts' treatment on April 9 were admitted by stipulation, with defendants reserving the right to object to certain portions. On his second visit to the hospital, Roberts was examined and treated by Dr. Gatewood, whose diagnosis as listed on the hospital record read, "Multiple contusions and hematoma, consistent with excessive force." Dr. Gatewood was not available to testify at the trial. Defendants objected to the phrase "consistent with excessive force" on the grounds that it was self-serving, unfairly prejudicial and an invasion of the province of the jury. The objection was sustained and the hospital record was admitted with the phrase "consistent with excessive force" deleted.

On appeal Roberts argues that the phrase should have been admitted. Relevant evidence is inherently prejudicial, Roberts claims, but here there was no danger of unfair prejudice outweighing the probative value of the phrase.

Defendants argue that the phrase was properly excluded under Rule 803(4) of the Federal Rules of Evidence because it pertains to personal fault rather than the cause of the injury.

■ Under Fed.R.Evid. 803(4), a patient's statements are admissible under the following conditions:

Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

In light of the patient's strong motivation to be truthful, statements regarding present or past conditions made to aid the diagnosis or treatment are admissible under this hearsay exception. Also admissible are statements regarding the cause of the condition, if pertinent to the diagnosis or treatment. Statements regarding fault, however, do not fall within this exception. "Thus a patient's statement that he was struck by an automobile would qualify but not his statement that the car was driven through a red light." Fed.R.Evid. 803(4), Notes of the Advisory Committee, exception (4).

■ In *United States v. Iron Shell*, 633 F.2d 77 (8th Cir.), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981), this court applied a two-part test to determine admissibility under Rule 803(4) of a physician's testimony concerning a nine-year-old rape victim's account of the attack: (1) is declarant's motive in making the statements consistent with a desire to promote treatment? and (2) is it reasonable for the physician to rely on the information in his diagnosis or treatment? *Id.* at 84. In *United States v. Iron Shell*, we found no improper motive behind the child's declara-

---

**3.** The police officers testified that weapons seized are destroyed one year after the judgment of conviction is final.

tions and held that the statements aided the physician in limiting his examination of the girl. Additionally, the child's age was a factor supporting admissibility and assuring trustworthiness. *Accord, United States v. Nick*, 604 F.2d 1199 (9th Cir. 1979) (per curiam). We noted, however, that the court of appeals has a limited role in reviewing matters of admissibility. We must not substitute our own judgment for that of the district court and may only reverse on a showing of clear abuse of discretion. *United States v. Iron Shell, supra*, 633 F.2d at 86; *E. I. duPont de Nemours v. Berkley & Co., Inc.*, 620 F.2d 1247 (8th Cir. 1980); *United States v. Cochran*, 475 F.2d 1080 (8th Cir.), *cert. denied*, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973).

We find no abuse of discretion in the case at bar. Because Dr. Gatewood did not testify at the trial, we have no way of knowing how he reached the determination that "excessive force" was involved in Roberts' injury. In the context of this case, the statement is a conclusion going to fault rather than the cause of the condition and does not serve to promote diagnosis or treatment. If this conclusion were based on Roberts' statements to the doctor, we would have none of the guarantees of proper motive and trustworthiness present in *Iron Shell*. In addition, unlike *Iron Shell*, the statement was not necessary to provide guidelines for the examination or treatment. While a statement that the injuries resulted from "force" or "trauma" might be admissible in some circumstances, the conclusion that "excessive force" was used was properly excluded here.

The judgment of the district court is affirmed.