**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jose Luis PIZARRO,**
**Defendant-Appellant.**

**No. 84–1397.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 10, 1984.
Decided March 7, 1985.

Michael B. Mann, Oak Brook Terrace, Ill., for defendant-appellant.

Dean J. Polales, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before ESCHBACH and COFFEY, Circuit Judges, and DUPREE, Senior District Judge.[*]

ESCHBACH, Circuit Judge.

Jose Pizarro was convicted of distribution of heroin in violation of 21 U.S.C. § 841(a)(1) and sentenced to a ten-year term of imprisonment, to be followed by a fifteen-year special parole term. On appeal, he cites as error (1) the district court's refusal to allow the introduction of the previous testimony of a co-defendant, (2) the introduction of an allegedly prejudicial statement he made at the conclusion of a previous trial, and (3) certain comments by the prosecutor in closing argument. He also argues that the evidence was insufficient to support his conviction. We find the appellant's citations of error to be without merit, and the evidence to be sufficient. Accordingly, we affirm the judgment of conviction.

## I.

Drug Enforcement Administration Special Agent Walter Peasant, working undercover, gained the confidence of Miguel Rodriguez, who agreed to sell him an ounce of heroin. After this sale was successfully completed, Peasant arranged to purchase two kilograms of heroin from Rodriguez. At 12:15 a.m. on April 6, 1979, Rodriguez called Peasant at a special DEA undercover telephone number. Rodriguez stated that he was with his source at the time, and would have to withdraw $10,000 from his credit union in order to "front" the money for part of the heroin to his source. Peasant made arrangements to contact Rodriguez later in the day.

At 10:45 a.m. that day, Peasant recorded the first of a series of telephone calls to Rodriguez. Rodriguez assured Peasant that the heroin could be delivered that day, and promised to contact him as soon as he heard from his source. Peasant also spoke at that time to William Lara, Rodriguez's partner, who also assured him that Rodri-

guez would call when they heard from the source. Peasant called again at 12:15 p.m., and Rodriguez told him he had not yet heard from his source. At 1:15 p.m., Peasant again called Rodriguez, who stated he had gone to the bank and picked up his $10,000 check, and that he still had to cash the check. At about 1:20 p.m., Rodriguez and Lara were observed leaving Rodriguez's house in separate cars. Rodriguez was carrying a green bag. DEA agents followed the men to a credit union, where Rodriguez picked up a $10.00 check. Both men then drove to a bank, where Rodriguez was observed cashing the $10,000 check. Rodriguez made several telephone calls from a pay telephone, and he and Lara returned to Rodriguez's home at 3:55 p.m. Almost immediately, Peasant received a call from Rodriguez, who told him he would be at another house waiting for his source to contact him. Rodriguez gave Peasant a telephone number at the second house. The new number was registered to Lucy Torres at 2155 North Avers in Chicago. Five minutes after this telephone call, Rodriguez, carrying the green bag, and Lara left Rodriguez's house and drove to the area of Palmer and Avers, arriving at 4:15 p.m. Both men entered the building at 2155 North Avers.

At 4:15, Rodriguez again called Peasant. He told Peasant that he was still waiting for his source. Agents had observed Lara return to the car shortly after the men arrived at the North Avers address. Rodriguez explained that the source was a very cautious man, and that he did not want to meet anyone. He further stated that he would call Peasant when the source arrived, and that Lara would deliver the heroin at the Town and Country Restaurant on North Avenue in Chicago. At 5:30, Peasant called Rodriguez, who said he was still waiting for his source, but that the source was on his way, and was going to personally bring Rodriguez the heroin. At 5:40, the defendant, Jose Pizarro, was observed driving slowly eastbound on Palmer. Pizarro

---

[*] The Honorable Franklin T. Dupree, Jr., Senior District Judge for the Eastern District of North Carolina, sitting by designation.

drove past Avers to the alley immediately east of Avers. He pulled into the alley, backed out, and drove west on Palmer. Pizarro then parked his car on the east side of Avers just north of Palmer. He walked to the southeast corner of Avers and Palmer and looked up at the second floor window of 2155 North Avers for a few seconds. He then walked east and west on Palmer looking in all directions. Pizarro continued walking up and down Palmer for a while scanning the area, and finally entered the rear area of 2155 North Avers. At 5:50, Pizarro left the rear area of the building and drove away. At 5:55, Peasant again spoke to Rodriguez, who told him the source was "freaked out," but that Rodriguez had given him the money, and that the source would return with the heroin. At 6:25, Peasant again spoke to Rodriguez. Rodriguez told him the source had been gone about 25 minutes. At 6:30, Pizarro parked on the corner of Avers and Palmer and got out of the car carrying a brown paper bag. He walked directly to the alley and entered the rear area of 2155 North Avers. Between 4:20 p.m. and 6:50 p.m., no one except Rodriguez and Pizarro came anywhere near the rear of the building at 2155 North Avers.

At 6:50, Rodriguez and Peasant had their final telephone conversation of the day. Rodriguez told Peasant that he had one kilogram of heroin and that after payment had been made and delivery completed, the other kilogram would be delivered. He said he had opened the package of heroin and checked it, and had closed it with tape. Peasant was told Lara was leaving to deliver the package.

Shortly after the call, Rodriguez and Lara left the area of Palmer and Avers in different cars. They drove to Drake Avenue, where they parked, and Rodriguez handed Lara an object. Both men then drove in their separate cars to the Town and Country Restaurant, where Peasant was waiting for them. Lara parked, got out of his car, and carrying a green bag, got into Peasant's car. Lara delivered approximately one kilogram of heroin wrapped in gray duct tape. The tape had been cut. Peasant told Lara he was going to show his partner the heroin, and got out of the car. Lara and Rodriguez were then arrested.

At 7:45 p.m., agents returned to 2155 North Avers to arrest Pizarro. The occupants did not immediately answer the door, although the agents announced their office. Several agents proceeded to the rear of the building, and Lucy Torres let them into the second floor apartment. As agents entered the kitchen, William Caban-Torres was observed coming out of the bathroom. Pizarro was seated on a couch in the apartment's front room. Pizarro was arrested. A search of the apartment revealed one ounce of heroin in the toilet bowl and another one-half ounce in the kitchen.

## II.

The above-described events led to Jose Pizarro's conviction in 1979 for distribution of heroin. 21 U.S.C. § 841(a)(1). This court reversed that conviction for trial error. *United States v. Rodriguez*, 627 F.2d 110 (7th Cir.1980). Pizarro was tried twice in 1981. Both trials led to convictions; the trial judge granted Pizarro's new trial motion in the first, and we reversed again in the second. *United States v. Pizarro*, 717 F.2d 336 (7th Cir.1983).

Pizarro now alleges that error has again infected his trial, and, further, that the evidence was insufficient to support a conviction. We will examine each allegation in turn.

### A. Admissibility of Rodriguez's Former Testimony

Rodriguez and Pizarro were jointly tried for a second time in November 1981. At that time, Rodriguez took the stand in his own defense. The government's theory was that Pizarro was the source of the heroin supplied to Agent Peasant on April 6, 1979. During his testimony, however, Rodriguez identified someone else as the

source.[1]  Rodriguez's subsequent refusal to testify at a third trial rendered him unavailable, Fed.R.Evid. 804(a)(1), and Pizarro sought admission of Rodriguez's former testimony pursuant to Fed.R.Evid. 804(b)(1).  The district judge refused to admit the testimony, concluding that the government had been unable to develop the testimony fully at the second trial.  Finding that the government had both the opportunity and the motive to develop the testimony, we reversed.  *United States v. Pizarro*, 717 F.2d 336, 349 (7th Cir.1983).

Pizarro again sought admission of the testimony at the trial below.  After conducting an extensive hearing at which both Rodriguez and his attorney testified, the district court judge found that Pizarro had procured Rodriguez's refusal to testify by threatening that both Rodriguez and his family would be harmed or killed if Rodriguez testified against Pizarro.  Under Fed. R.Evid. 804(a),

> [a] declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying.

Pizarro argues that we have already evaluated the evidence of death threats in *United States v. Pizarro*, 717 F.2d 350 (7th Cir.1983), and found it wanting.  We disagree with the appellant's reading of our prior opinion.  While the government argued in *Pizarro* that Rodriguez's refusal to testify had been procured by Pizarro through threats, the trial court never ruled on the credibility of the testimony by Rodriguez's attorney asserting the threats, nor did she rule on the question of whether Rodriguez's refusal to testify was based on a bona fide assertion of his Fifth Amendment privilege.[2]  Moreover, Rodriguez never testified at the earlier hearing, and the trial judge refused to allow Pizarro to take the stand and deny the accusations of threats under oath.

At the hearing below, by contrast, Rodriguez did testify.  As appellant notes, his testimony was singularly evasive, and he never named Pizarro directly as the source of his fear.  But the court was entitled to take into consideration, as it did, Rodriguez's demeanor[3] and the fact that he refused to give a direct answer to the question whether Pizarro was the source of the threats.  Rodriguez's attorney also testified that Pizarro had twice directly threatened him, telling him it would be better for Rodriguez if he did not testify, and that the attorney had relayed these threats to Rodriguez.[4]  The trial judge, who heard all the testimony, stated that he was persuaded that Pizarro made it known to Rodriguez through a "feedback operation" that it would be dangerous for Rodriguez and his family if he testified.  A district court's determination on the question of unavailability will be reversed only for an abuse of discretion.  *United States v. Puckett*, 692 F.2d 663, 670 (10th Cir.1982), *cert. denied*, 459 U.S. 1091, 103 S.Ct. 579, 74 L.Ed.2d 939 (1982) *and* 460 U.S. 1024, 103 S.Ct. 1276, 75 L.Ed.2d 497 (1983); *United States v. Amaya*, 533 F.2d 188, 191 (5th Cir.1976), *cert. denied*, 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551 (1977).  The district court's determination here that Pizarro procured Rodriguez's refusal to testify was not an abuse of discretion, and the exclusion of Rodriguez's former testimony was not error.

---

1.  In his testimony, Rodriguez identified his source as "a person named Willie, not Willie Lara."  When asked if Willie was the source who delivered the heroin on April 6 to the apartment on North Avers, however, Rodriguez first responded that he was not.

2.  At the time of the earlier refusal to testify, Rodriguez was still awaiting sentencing and appeal.

3.  Rodriguez's attorney represented to the court that Rodriguez had become "recalcitrant and reluctant to testify" when told that Pizarro would be present.

4.  The attorney also testified that Rodriguez had informed him at his first interview that he was frightened of Pizarro.

### B. Admission of Pizarro's Post-Trial Statement

After the conclusion of the evidence in appellant's first trial, and during the jury's deliberations, Pizarro approached Special Agent Trifon Magrames, who was leaving the courtroom carrying the government's exhibits. Pizarro asked Magrames, "Hey man, can I have my dope back?" Magrames replied, "No," and Pizarro began to laugh. Magrames testified to this conversation over Pizarro's objection below. Pizarro now argues that the trial court erred in determining that the probative value of this testimony outweighed its prejudicial effect.

■■■ It is beyond cavil that the trial court's determinations under Fed.R.Evid. 403 will not be overturned unless there has been a showing of abuse of discretion. *See, e.g., United States v. Falco,* 727 F.2d 659, 665 (7th Cir.1984); *United States v. Serlin,* 707 F.2d 953, 959 (7th Cir.1983). Appellant's argument is that his statement was only an attempt at gallows humor, and that its admission was undoubtedly prejudicial in "a drug case where prejudice is almost presumptive against the defendant." App. Brief at 17. We do not believe, as does appellant, that cases involving allegations of narcotics violations are sui generis, and that a district court judge must put his "thumb on the scale" in favor of a finding of prejudicial effect in such cases. Nor do we believe that the jury was incapable of assessing the weight to be given appellant's statement, especially in light of the fact that appellant argued that the statement was only a joke. We find no abuse of discretion.

### C. Government's Closing Argument

Pizarro argues that three comments made by the government attorneys during closing argument unfairly prejudiced the jury and shifted the burden of proof to him. We shall examine each of the allegedly prejudicial statements in turn.

■■■ The first allegedly prejudicial comment occurred in the context of argument concerning Pizarro's statement to Agent Magrames. Defense counsel argued extensively that the jury should disregard the statement as nothing but a weak attempt at humor made by a defendant under the strain of trial. The government attorney responded to this argument with the following:

> That statement, [defense counsel] implores you to disregard it. Well, you know the context in which that statement was made, while a jury was out. Mr. Pizarro thought, I've beaten these guys, hey, it's over now, no way.

An objection to this argument was overruled. Pizarro claims that the statement was a subtle attempt to shift the burden of proof to the defendant. We see nothing unfair or improper about this argument, nor do we see how it can be construed as an attempt to shift the burden of proof.

■■■ Pizarro next claims that the government argued facts not in evidence. A full evaluation of this allegation demands that the comments be reproduced in their entirety:

> Mr. Polales: [Government's Attorney] But there is another witness in this case, a witness who unlike the agents, was in that apartment at 2155 North Avers when the transfer of the heroin took place, a witness, Mr. Rodriguez, the seller of the heroin, a witness that identifies Mr. Pizarro as the source. He identifies Mr. Pizarro as the source of the heroin.
>
> Mr. Mann: [Defense Counsel] Objection, Judge.
>
> The Court: That is sustained.
>
> Mr. Mann: Judge, I move for a mistrial.
>
> The Court: There was no—
>
> Mr. Polales: Your Honor—
>
> The Court: You are entitled to make a rhetorical argument, but there is no evidence of any identification by Mr. Rodriguez.
>
> Mr. Polales: All right, I will rephrase my argument.
>
> Mr. Mann: I don't think rephrasing is sufficient in this case, Judge. I renew my motion for a mistrial.

Mr. Polales: When I say that Mr. Rodriguez identifies Mr. Pizarro as the source—

Mr. Mann: Judge, I object again.

The Court: Let him finish his argument.

Mr. Mann: Well this is not rehabilitative, Judge. This is reemphasizing the error that occurred already.

The Court: I think counsel is about to say he doesn't mean that.

Mr. Polales: That is right, that is right.

Mr. Mann: Judge, he could pick his phrases a little better.

Mr. Polales: I don't mean that Mr. Rodriguez—no one heard Mr. Rodriguez in the courtroom testifying. No one saw Mr. Rodriguez say Mr. Pizarro was the source. But in a sense, in a rhetorical manner, I used the word "identified" because Mr. Rodriguez truly does describe for you the person who is the source, and he describes it throughout the day in the recorded telephone conversation in that manner. It is clear that the evidence supports the fact that this man is the source of the heroin. Mr. Rodriguez is, in a sense, in a sense another witness. He wasn't on the witness stand, obviously. I didn't mean that.

A full reading of the transcript reveals that the government attorney did not intend to argue that Rodriguez had actually made an identification of Pizarro as the source, nor could the jury reasonably have believed that Rodriguez made such an identification after the attorney's explanation. We cannot agree that the government was attempting to argue facts not in evidence; viewed in its entirety, it is apparent that the government was merely arguing the inferences to be drawn from the facts properly before the jury.

Finally, Pizarro contends that the government improperly argued that the defense should have subpoenaed William Caban-Torres. Again, a summary of the defense argument preceding the allegedly improper statement is necessary. Defense counsel had argued that Caban-Torres,

rather than Pizarro, was the source of the heroin. Defense counsel then stated:

Caban-Torres—again, I ask you, don't blame either the government or the defense for some people not being here. That is not their fault or our fault. We can't consider them, unfortunately. I am sure there are things that the government would like to tell you, there are things that I would like to tell you. But we play by the rules. We play by the rules. We play under this system of justice, which is the real issue here. Are you going to hold the government to their burden to prove beyond a reasonable doubt that this is the man who brought that stuff, this horrible stuff?

In response, the government attorney argued:

[Defense counsel] says "people who aren't here." Mr. Caban-Torres, referring to Mr. Caban-Torres. Mr. Caban-Torres isn't here. Well, the one thing, ladies and gentlemen, [defense counsel] knows the rules, as he put them, the rules of this game. He knows that there are subpoenas, and if Mr. Caban-Torres would have helped, he would have subpoenaed him.

An objection to this statement was sustained.

■ Pizarro contends that the government improperly argued that he had the burden of producing Caban-Torres. We believe, however, that the government's argument fell safely within the invited response doctrine. See *United States v. West*, 670 F.2d 675, 688 (7th Cir.), *cert. denied*, 457 U.S. 1124, 1139, 102 S.Ct. 2944, 73 L.Ed.2d 1340 (1982); *United States v. Isaacs*, 493 F.2d 1124, 1165 (7th Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146 (1974). Having argued that Caban-Torres was the source, and that "the rules of the game" prevented the parties from presenting certain evidence to the jury, defense counsel stated that the government must be held to its burden of proof. We believe the jury could reasonably have concluded that the government, having the burden of proof, should have subpoenaed Caban-

Torres, and that the defense was somehow precluded from doing so by "the rules of the game." The government's response was not argumentative, and the trial judge, after sustaining an objection, immediately stated that neither side had the burden of producing Caban-Torres. We find no prejudice to Pizarro from this comment.

### D. Sufficiency of the Evidence

■ Pizarro argues that the evidence is insufficient to sustain his conviction. His argument is that the government produced no direct evidence that he was the source of the heroin, and instead asked the jury to infer that Pizarro was the source by comparing his movements with the statements made by Rodriguez on the tapes. Viewing the evidence in the light most favorable to the verdict, as we are required to do, we are convinced that the government met its burden of establishing the appellant's guilt.

As our outline of the facts shown at trial reveals, Part I, *supra,* Rodriguez kept Peasant informed about the progress of the drug transaction through a series of telephone conversations. At each stage of the transaction, surveillance agents observed Rodriguez, Lara, and Pizarro. Rodriguez informed Peasant that the source was going to deliver the heroin personally. Soon after, Pizarro appeared, scanned the area, and entered the building where Rodriguez was waiting. Five minutes after Pizarro left the first time, Rodriguez told Peasant that the source had left with the money. Pizarro returned with a bag, and within twenty minutes, Rodriguez informed Peasant that the heroin had been delivered. During the period of time when Rodriguez said the money had been collected and the heroin had been delivered, no one but Pizarro and Rodriguez came near the building at North Avers. We do not believe that the jury was required to engage in unsupported speculation in order to find that Pizarro was the supplier of the heroin.

### III.

For the reasons stated above, the judgment of conviction is AFFIRMED.