UNITED STATES of America,
Plaintiff-Appellee,

v.

Derin POLLARD, Defendant-Appellant.

No. 85–1563.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 4, 1985.

Decided May 8, 1986.

R. Thomas Day, Asst. Fed. Pub. Defender, St. Louis, Mo., for defendant-appellant.

Michael C. Carr, Asst. U.S. Atty., Benton, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, POSNER, Circuit Judge, and CAMPBELL, Senior District Judge.*

CUMMINGS, Chief Judge.

Defendant Derin Pollard appeals his conviction of conspiracy to distribute cocaine

* The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

in violation of 21 U.S.C. §§ 841(a)(1) and 846. He raises several evidentiary issues regarding the district court's refusal to admit certain medical evidence and also the propriety of the prosecutor's conduct during his closing argument. For the reasons set out below, we reverse defendant's conviction and remand the case for new trial.

I

The key witness for the government in this case was Roger Dale. He testified that in early 1984 he made three trips to Florida from Illinois and purchased both marijuana and cocaine from defendant. After Dale returned to Illinois from his third trip to Florida, he was arrested on February 21, 1984, when he sold cocaine to an undercover agent. Two weeks later, Dale posted bond, and thereafter called defendant to advise him of his arrest. Dale further testified that defendant subsequently attempted to contact Dale, but since Dale did not have a telephone in his home, Dale's parents, brother, and girlfriend all received phone calls from defendant, and they gave messages to Dale to call defendant.

Dale was tried and convicted in Saline County, Illinois, in August 1984 of possession of controlled substances in contravention of Illinois law. He admits that he perjured himself in his own trial by naming the wrong person as his source. He made an agreement with drug enforcement agent Hubert Coleman: in exchange for Dale's agreeing to give a statement of all the facts concerning his case and to testify in this federal case against Pollard, the agent would testify at the Illinois sentencing hearing as to Dale's cooperation. Dale was sentenced to ten years. Dale's case led agent Coleman to arrest defendant in Florida on October 2, 1984.

Defendant's medical condition at the time of his arrest is critical to the legal claims that he raises in this appeal. He severely injured his arm in an automobile accident in

June 1984. The arm was broken in five places, and as a result some steel plates, two pins and a wire had to be placed in his arm. Defendant testified during a pretrial motion that the arresting agents twisted his injured arm behind his back in an attempt to handcuff him, thereby breaking the steel plate that was in his arm. He said that as a result he was in great pain during his arrest. He was taken to the police station, where he confessed orally and signed the first four pages of a six-page written confession before he decided to refuse to cooperate further. Three days later, on October 5, 1984, defendant was examined by a physician. He told the physician that this arm had been mistreated by the arresting agents. The physician concluded that the steel plate inside defendant's arm was indeed broken, and a second operation was subsequently performed on October 18, 1984, to repair the re-injured arm.

During his trial, defendant did not testify. He attempted to admit into evidence medical records to show the circumstances surrounding his arrest and subsequent confession, and also to have a physician (not the same one who treated him) testify and explain the medical records. Upon the government's relevancy objection the district court ruled that the evidence was inadmissible, saying that without any alleged wrongdoing by the arresting agents, the medical records were not relevant (Tr. 256). The only evidence that defendant was able to introduce on this issue was the testimony of his friend Kevin Robinson, who was present when defendant was being led away by the arresting agents. Robinson testified that defendant "wasn't walking right" and had "his head laid back in disgust or something" as he was being led away, and also that defendant was holding his injured arm "bent at the elbow up to his side" while the other arm was "swinging freely" (Tr. 263, 265).

By contrast, the government discussed the condition of defendant's arm several times during the trial. In his opening statement, the prosecutor stated that at no time during the arrest was defendant's arm re-injured, and that defendant never complained of any pain. Agent Coleman testified that he noticed defendant's deformed arm and that he therefore did not handcuff him and was careful with the arm. Coleman further testified that defendant never requested medical assistance and did not appear to be in pain. Agent Keaney, who assisted agent Coleman in the arrest of defendant, also testified and essentially repeated what agent Coleman said. In his attempt to admit the medical records into evidence, defendant noted that it was only fair to present this evidence since the government had thoroughly discussed the issue in the presentation of its case, but the district court rejected this equitable consideration, saying that the government's testimony was simply the normal result of describing the circumstances surrounding the arrest (Tr. 257–258).

The arguments made in closing by the attorneys also form the basis of a legal claim raised by defendant. In his closing argument, defense counsel noted that Dale's father, brother, and girlfriend all allegedly received phone calls from defendant, and yet none of them came into court to support Dale's testimony against defendant (Tr. 291–292). This comment led to the following interchange during the government's closing argument:

MR. CARR (prosecutor): And any comments about where he [Dale] got his money—[defendant] could have brought in, I guess dad and and could have brought in the brother. We could have sat here for three or four days about messages and stuff but you know something else, the defendant could have brought also those individuals in if he wanted to to [sic].

MR. DAY (defense counsel): Your Honor, I object to that and move for mistrial. That is improper shifting of burden of proof.

MR. CARR: He [Mr. Day] opened the door. He had access to those witnesses and I'm allowed to comment on that when he said I should have called them.

THE COURT: I overrule the objection [of defendant].

MR. CARR: [Mr. Day] Could have stopped the trial in its tracks and could have got a subpoena if he wanted to have them in here ladies and gentlemen.

MR. DAY: I object to that. That is clear shifting of the burden of proof. I ask for a mistrial.

MR. CARR: He [Mr. Day] has opened the door to this by suggesting that the government should have called the witness[es] when he had access to the same witnesses.

THE COURT: I'll overrule the [defendant's] objection and deny the motion for mistrial.

(Tr. 300).

Defendant was subsequently convicted and sentenced to a period of confinement of six years. Since we here are upholding two of defendant's claimed errors in view of their combined effect, there is no need to discuss the alleged insufficiency of evidence except insofar as it bears on the issue of prejudicial error.

## II

The first contention raised on appeal by defendant is that the district court erred by ruling that the medical records proffered by defendant were irrelevant evidence and hence inadmissible. Under the Federal Rules of Evidence, the relevancy of evidence has two components: probative value and materiality. See Advisory Committee's Note on Fed.R.Evid. 401; E.W. Cleary, *McCormick on Evidence* 541 (3d ed.1984) (hereinafter referred to as *McCormick*). Defendant argues that evidence that his

arm was re-injured by a Drug Enforcement Administration agent during his arrest [1] is probative of whether his confession was voluntary, clearly a material issue in this case. Under 18 U.S.C. § 3501(a) a confession is "admissible in evidence [only] if it is voluntarily given," and under the court's instruction the jurors were to determine its weight after considering, *inter alia*, "the defendant's personal character[istics] and the conditions under which the statement was made" (7th Circuit Pattern Jury Instruction 3.09; Tr. 303–304).

In examining this evidentiary issue, we are mindful that the district court's determination of whether evidence is relevant is entitled to great deference, and that a relevancy ruling should be reversed only if the court abused its discretion. *United States v. Balistrieri*, 778 F.2d 1226, 1231 (7th Cir.1985); *United States v. Latham*, 754 F.2d 747 (7th Cir.1985). However, the definition of relevancy adopted in Rule 401 is an expansive one, and for evidence to be relevant under this definition,[2] it "need not conclusively prove the ultimate fact in issue, but only have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.'" *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 745–46, 83 L.Ed.2d 720. Even if the proposition for which it is offered still seems improbable after the evidence is considered, the proffered evidence is not necessarily irrelevant. *McCormick* at 543. As Dean McCormick has so aptly phrased it, to be relevant evidence need only be a brick, not a wall. *Id.*

---

**1.** The medical records proffered by defendant describe in medical terms the nature of defendant's re-injured arm. The clinical record entered on October 5, 1984, states that "[t]he patient claims that he was manhandled by the police officers, who handcuffed him and twisted his arm." In the "admission diagnosis" section of the medical records, apparently entered in connection with defendant's admission into the hospital for his second operation on October 18, 1984, the record states that "[o]n the 2nd of October the patient was involved in an altercation during a drug arrest where his left upper

arm was twisted and placed behind his back while he was being handcuffed and he claims that he experienced pain in his mid left forearm." (Defendant's Exhibit # 2).

**2.** Relevant evidence is defined as follows in Rule 401 of the Federal Rules of Evidence:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Applying the Rule 401 relevancy standard to the instant case, it is clear that the district court erred by not admitting the proffered evidence. The physical condition of the defendant at the time of his arrest was plainly an important factor in determining whether his subsequent confession was voluntary, *Greenwald v. Wisconsin*, 390 U.S. 519, 520–21, 88 S.Ct. 1152, 1153-58, 20 L.Ed.2d 77; *Stawicki v. Israel*, 778 F.2d 380, 382–83 (7th Cir.1985); *United States ex rel. Adams v. Bensinger*, 507 F.2d 390, 394–95 (7th Cir.1974), certiorari denied, 421 U.S. 921, 95 S.Ct. 1589, 43 L.Ed.2d 789, and evidence that during this critical time period (*i.e.*, from October 2 to October 5, 1984, the date defendant was examined by his physician) defendant's arm was re-injured[3] surely makes it more likely that it was reinjured at the time of his confession, and hence that he was in great pain at that time. Although Pollard has not proffered any evidence in addition to the medical records that the arresting agents actually caused the steel plate in his arm to break, a confession given while a defendant is suffering extreme pain can be involuntary even if the pain is not caused by his interrogators. Even if the withheld medical records might not convince the jury that defendant's confession was involuntary, the proffered evidence need not surmount such a demanding hurdle in order to be relevant.

The government contends that even if the medical records are relevant, defendant's statements attributing fault to the government agents for breaking the steel plate in his arm during the arrest do not qualify under the medical records exception to the hearsay rule (Fed.R.Evid. 803(4)). This contention was not made below, so that the district court never reached the issue whether this evidence was admissible hearsay.

Rule 803(4) allows the admission of statements made for medical treatment only "insofar as reasonably pertinent to diagnosis or treatment." This includes statements regarding the cause of defendant's medical condition, if pertinent to diagnosis or treatment. The sensible logic behind this rule is that statements made for purposes of diagnosis or treatment contain an extra guarantee of trustworthiness since an ailing defendant has a self-interest in curing his medical malady. By contrast, statements regarding fault do not qualify under this exception, *Cook v. Hoppin*, 783 F.2d 684, 690 (7th Cir.1986); *Roberts v. Hollocher*, 664 F.2d 200, 204 (8th Cir.1981), for such statements, being irrelevant to diagnosis or treatment, lack the same indicia of trustworthiness. See Advisory Committee Note to Fed.R.Evid. 803(4). Of course, statements in medical records frequently relate both to the cause of a medical condition and fault. In such a situation a district court can redact the statement so as to render it admissible, rather than let an inadmissible portion of the statement taint the whole and refuse to admit the entire statement. *See, e.g., United States v. Nick*, 604 F.2d 1199 (9th Cir.1979) (in a sexual assault case, physician allowed to testify as to the victim's statements regarding the cause of the injury, omitting the identity of the assailant).

In the instant case, the proffered medical records contain statements relating both to the cause of defendant's injury and other facts pertinent to treatment as well as to fault. The records state that as of October 5, 1984, his arm that was previously broken was once again re-injured; this is clearly pertinent to treatment and is admissible under Rule 803(4). The records also state that defendant's arm was re-injured when, on October 2, 1984, he was arrested and the arresting officers twisted his left

**3.** As described in note 1 and discussed below, the proffered medical records contain further evidence relating to the October 2 date when defendant's arm was re-injured and to the alleged cause of the new injury (defendant's arm was twisted up behind his back by a government agent when arresting him). To the degree that any or all of this further evidence is admissible hearsay, it clearly buttresses our conclusion that the medical records are relevant evidence, since it provides a strong nexus to the ultimate issue of whether defendant's confession was voluntary.

upper arm and placed it behind his back, and that defendant experienced severe pain. Such evidence was consistent with Pollard's testimony at the pre-trial hearing on the motion to suppress his statement. The part of these records identifying one of the arresting officers as the person who twisted defendant's arm relates to fault and is clearly inadmissible hearsay unless one of the hearsay rule exceptions in Rule 803 applies. The remaining statements relate to cause (defendant's arm was twisted and placed behind his back) and other matters (injury occurred on October 2, 1984; defendant experienced severe pain) pertinent to diagnosis and therefore are admissible under Rule 803(4). In sum the evidence withheld was plainly relevant and should not have been ruled inadmissible on that ground, the only one the government suggested to the district court. Because of their importance in determining the voluntariness of defendant's confession which was so vital to the prosecutor's case, as conceded at oral argument before us, the failure to admit the relevant admissible portions of the medical records was reversible error.

### III

Defendant correctly contends that the portion of the prosecutor's closing argument reprinted above constituted an impermissible shift of the burden of proof. A prosecutor may not make statements that in effect distort the burden of proof. *United States v. Vargas*, 583 F.2d 380, 386 (7th Cir.1978). Such error is committed when, as here, the prosecutor states that witnesses who allegedly would support the government's case but were never called to the witness stand could just as easily have been called by defendant. *United States v. Williams*, 739 F.2d 297, 299 (7th Cir.1984). An attorney may comment on an opposing counsel's failure to call a witness if such witness is peculiarly within the opposing counsel's power to produce and if that witness' testimony would elucidate issues in the case, *Williams*, 739 F.2d at 299, but no such showing has been made in the instant case.

The significance of such unwarranted comments by the prosecutor is great. In a criminal case, the burden is on the government to prove its case beyond a reasonable doubt. This burden requires the government to produce those witnesses who support the government's case. In the instant case the prosecutor's comments had the effect of challenging this unchallengeable burden. A prosecutor simply cannot be allowed to make such statements with impunity.

The government argues that this does not constitute error because the prosecutor's response was "invited" by the defense counsel's statement that the government never called the Dale family or Dale's girlfriend as witnesses, with the resulting inference that if these witnesses testified their testimony would not support the government's story. This contention misapplies the so-called "invited response" doctrine. In this legal claim raised by defendant, there are two distinct issues: whether the prosecutor's behavior was error, and if so whether it is reversible error. The invited response doctrine is not relevant to the determination of whether the prosecutor's behavior was error; rather, it relates only to whether such erroneous behavior unfairly prejudiced defendant so as to constitute reversible error. *United States v. Young*, —— U.S. ——, 105 S.Ct. 1038, 1044–45, 84 L.Ed.2d 1 ("[T]he issue is not the prosecutor's license to make otherwise improper arguments, but whether the prosecutor's 'invited response,' taken in context, unfairly prejudiced the defendant."); *United States v. Peco*, 784 F.2d 798, 805–806 (7th Cir.1986); *United States v. Mazzone*, 782 F.2d 757, 763 (7th Cir. 1986); *United States ex rel. Shaw v. DeRobertis*, 581 F.Supp. 1397, 1407–08 (N.D. Ill.1984), affirmed, 755 F.2d 1279 (7th Cir. 1985). While two wrongs may not make a right, they may make an error non-reversible error. *Mazzone*, 782 F.2d at 763. This view of the invited response doctrine comports with previous cases where similar conduct by a prosecutor was found not to

warrant reversal of the conviction. See, *e.g.*, *United States v. Pizarro*, 756 F.2d 579 (7th Cir.1985), certiorari denied, —— U.S. ——, 105 S.Ct. 2686, 86 L.Ed.2d 703; *United States v. Panza*, 750 F.2d 1141 (2d Cir. 1984); *United States v. Ivey*, 550 F.2d 243 (5th Cir.1977), certiorari denied *sub nom. Taglione v. United States*, 431 U.S. 943, 97 S.Ct. 2662, 53 L.Ed.2d 263; *United States v. Sherriff*, 546 F.2d 604 (5th Cir.1977); *United States v. Bastone*, 526 F.2d 971 (7th Cir.1975), certiorari denied, 425 U.S. 973, 96 S.Ct. 2172, 48 L.Ed.2d 797.

■ With this understanding of the invited response doctrine, this prosecutor's remarks can be appropriately examined in the context of the trial. It is true that the prosecutor was responding to defense counsel's closing statement when the prosecutor said that the Dale family or Dale's girlfriend could just as easily have been called by defendant, and this did mitigate somewhat the impact of the prosecutor's improper statement. However, the district court failed to sustain the defendant's well-taken objection based on improper shifting of burden of proof and, significantly, never remedied the error by simultaneously cautioning the jury that the defendant had no burden to produce evidence or call witnesses. Instead the court allowed the prosecutor, over still another identical objection, to compound the error by stating:

> [Defense counsel] could have stopped the trial in its tracks and could have got a subpoena if he wanted to have them [Dale family members or Dale's girlfriend] in here ladies and gentlemen.

(Tr. 304.) This lack of prompt intervention by the district court distinguishes the instant case from cases in which courts have held that similar conduct by the prosecutor did not constitute reversible error. *E.g.*, *Pizarro*, 756 F.2d at 586; *Ivey*, 550 F.2d at 244; *Sherriff*, 546 F.2d at 608. While the question whether the prosecutor's repeated misconduct, in isolation, constitutes reversible error here is a close one, that misconduct, together with the vital evidentiary error described above, mandates the reversal of defendant's conviction and a remand

for a new trial, since without the confession the case would have been a close one.

Reversed and remanded.