UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

FREDDIE MCCOLLUM, JR.; MARTHA
MCCOLLUM; RETANIA MELISSA
MCCOLLUM,
                    *Plaintiffs-Appellees,*

v.

ROBERT MCDANIEL; JAMES MURPHY,
Individually and as police officers
in the Prince George's County,
Maryland Police Department; PRINCE
GEORGE'S COUNTY, MARYLAND, a
Body Politic,                                          No. 01-1578
                    *Defendants-Appellants,*

MICHAEL HUBBARD,
                    *Defendant-Appellee,*

                    and

JAMES KLINE, individually and as a
police officer in the Prince George's
County, Maryland Police
Department,
                    *Defendant.*

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Catherine C. Blake, District Judge.
(CA-98-824-CCB)

Argued: February 25, 2002

Decided: March 25, 2002

Before LUTTIG and GREGORY, Circuit Judges, and
Henry M. HERLONG, Jr., United States District Judge
for the District of South Carolina,
sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Laura Jean Gwinn, Upper Marlboro, Maryland, for
Appellants. Michael McGowan, MCGOWAN, CECIL & SMA-
THERS, L.L.C., Laurel, Maryland, for Appellees. **ON BRIEF:** Sean
D. Wallace, John A. Bielec, Upper Marlboro, Maryland, for Appel-
lants.

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

## OPINION

PER CURIAM:

Freddie McCollum ("McCollum"), his wife, and his daughter
brought suit against the defendants under 42 U.S.C. § 1983 and state
law alleging, *inter alia*, excessive use of force. The case proceeded
to trial. The jury returned a verdict of over $4.1 million against the
defendants. The district court denied the defendants' motion for a new
trial, but remitted the jury's damages award, which the plaintiffs
accepted. The defendants appeal from the district court's order deny-
ing their motion for a new trial.

I.

On June 28, 1997, McCollum was signaled to pull over by Prince
George's County police officer Robert McDaniel ("McDaniel").

McDaniel pulled McCollum over because of his failure to display a tag on the front of his vehicle. At the time of the incident, McCollum was a fifty-year old black male. Nearly every fact following McDaniel's signaling McCollum to pull over was disputed at trial.

McDaniel testified that after he turned on his blue light, McCollum continued driving for about one mile and pulled into a driveway. McCollum testified that he pulled over immediately, told McDaniel that he had left his wallet at home, and motioned for the officer to follow him to his house. When they arrived at the house, McCollum told McDaniel that he was going into the house to get his driver's license. McCollum testified that McDaniel kept putting his hand on his gun as if to draw it. When McCollum started to enter his house, McDaniel sprayed pepper spray at him, missed, but hit his daughter Retania. McDaniel testified that there was a brief altercation on the porch of the house, but that McCollum got away and ran into the house. McDaniel states that he did try to use his pepper spray at that point, but that the door was closed on his arm. Several neighbors testified that there was no struggle on the porch and that the officer's arm was not closed in the door. McCollum testified that at that point he was very frightened and climbed into his attic to hide.

McDaniel called for backup and Officer James Murphy ("Murphy") and K-9 Officer Michael Hubbard ("Hubbard") arrived on the scene. The officers, with Hubbard's dog, entered McCollum's house. Officers McDaniel and Murphy eventually made their way into the attic where they found McCollum hiding under some insulation.

The officers testified that as they got close to McCollum, he tried to lunge past them. The officers attempted to grab McCollum, but the three men fell through the ceiling. The officers testified that they landed on top of McCollum. The officers also testified that the dog was released at that time to apprehend McCollum.

McCollum's story differs dramatically from that of the officers. McCollum testified as follows. When the officers approached him in the attic, he got down on his hands and knees and surrendered. The officers then kicked him and began stomping him. While stomping him, Officer McDaniel's foot went through the ceiling. Officer McDaniel told McCollum to lower himself down through the hole,

which he did, and the officers followed him down through the same hole. Once in McCollum's living room, the officers began to beat him again, using a metal "asp." Officer McDaniel told him that he would teach him for trying to run and Officer Murphy called him "a dumb nigger." While the officers beat McCollum, they released the dog on him several times.

McCollum was severely injured in the incident. He suffered several fractures to the bones in his face. His right eye was ruptured and had to be surgically removed. His ribs were broken. His left hand and right leg were broken. His left lung collapsed and he suffered numerous lacerations from dog bites. The officers testified that McCollum received all of his injuries in the fall. Neither McDaniel nor Murphy were injured in any way from the same fall.

Before the civil trial began, McCollum faced criminal charges for assaulting Officers McDaniel and Hubbard, resisting arrest, and several traffic offenses. McCollum was found not guilty of the criminal charges and was only convicted of two traffic offenses (fleeing and eluding on foot and displaying registration plate issued to another).

McCollum underwent several surgeries immediately following the incident. His right eye was removed, his nasal bones were reshaped, and bones were realigned in his left hand. Following his discharge from the hospital, McCollum had several more surgeries. Plates and screws were removed from his hand, the orbital bones in his face were reconstructed, and his eyelids were reconstructed. McCollum had another surgery on the muscles in his eye socket because his artificial eye would repeatedly fall out of his head.

McCollum's doctors testified that he has the following permanent injuries: (1) sensory deficit in his left hand; (2) partial limitation of motion of the fifth finger; (3) loss of his right eye; (4) complete loss of the orbital floor; (5) concave cheek bone, which had to be built up using medpore and titanium; (6) posterior displacement of the cheek bone; (7) chronic sinus problems due to the fractures of his facial bones; (8) loss of sensation in his face due to the nerves being crushed; and (9) permanent loss of depth perception and field of vision due to the loss of his right eye.

The jury found one of the defendants liable for an unlawful entry into McCollum's home and awarded McCollum $1.00. The jury also found the defendants liable for excessive use of force and awarded McCollum $67,670 for past medical expenses, $145,000 for past and future lost wages, $3.5 million in non-economic damages, and punitive damages totaling $400,000. The jury's total award was $4,112,670.

The defendants filed a motion for new trial and/or remittitur. The district court denied the motion for a new trial, but granted a new trial *nisi* remittitur. The district court reduced the non-economic damages award to $1.25 million and the punitive damages award to $135,000. The total award after remittitur was $1,597,670, which was accepted by McCollum.

The defendants raised several issues in their motion for a new trial which are now before us on appeal. First, the defendants assert that they are entitled to a new trial because of misconduct by plaintiffs' counsel. Second, the defendants argue that the district court erred in admitting into evidence hospital records containing references to "assault." Third, the defendants argue that the district court erred in charging the jury on *respondeat superior* liability of the county. Finally, the defendants claim that the district court was required to further remit the jury's award on non-economic damages. Finding no error, we affirm.

## II.

The defendants assert that certain misconduct by McCollum's attorney requires a new trial. During cross-examination of McCollum, defense counsel tried to impeach McCollum's testimony by using his answers to interrogatories. Defense counsel asked McCollum whether McDaniel ever pointed his gun at him. McCollum responded that he had not. Defense counsel asked McCollum about his answer to an interrogatory where the word "brandished" was used. McCollum stated that "brandished" was not a word that he would use. Defense counsel then stated that McCollum had signed the interrogatory under oath, but McCollum responded that it was not his signature on the interrogatories. McCollum's attorney, Mr. Smathers, told the court that he had prepared the answers to interrogatories, sent McCollum

a copy, and then asked McCollum if he could sign it for him because of an oncoming deadline. McCollum agreed and Mr. Smathers signed McCollum's name.

The court discussed with the parties a possible stipulation regarding the interrogatory answers outside of the presence of the jury. The instruction the court eventually gave the jury is as follows:

> There had been an issue about Mr. McCollum's signature on his answers to interrogatories immediately before the break and I neglected to get back to that when we had [an intervening witness]. Counsel have spoken and agreed that Mr. Smathers— and counsel, correct me if I'm wrong— Mr. Smathers as Mr. McCollum's counsel spoke with Mr. McCollum, prepared the answers, sent him a copy, asked him if the answers were correct and because of a lack of time, asked Mr. McCollum if, he, Mr. Smathers, could sign the answers to interrogatories for him. Mr. McCollum agreed. Therefore, counsel are stipulating or agreeing that the interrogatory answers are Mr. McCollum's answers, the same as if he had signed them personally.

(J.A. at 510.)

The defendants state that they intended to impeach McCollum's testimony with inconsistent answers on his interrogatories. At trial, McCollum testified that the reason he fled from the police was because of an adverse experience he had with the Prince George's County police prior to the incident. In his answers to interrogatories, McCollum denied any prior contact with the Prince George's County police. The defendants argue that McCollum "deftly escapes an accusation of perjury since the answer [to interrogatories] is signed by counsel." (Appellant's Br. at 13.) The defendants also state that they intended to impeach McCollum with the inconsistency between the interrogatory answer that McDaniel "brandished" his weapon and McCollum's trial version that McDaniel only kept putting his hand on his weapon. The defendants argue that they were unable to impeach McCollum's credibility because of Mr. Smathers' misconduct in signing McCollum's name on the answers to interrogatories.

McCollum argues that the defendants did not preserve this issue for appeal. McCollum states that the defendants did not object to Mr. Smathers' execution of his client's answers, and that the defendants participated in formulating the stipulation to be read to the jury. McCollum further states that in order to preserve the matter, the defendants were required to move for a mistrial at the time of the incident.

In their reply brief, the defendants do not dispute that they failed to make a timely objection. Instead, the defendants argue that the court may review this issue under the "plain error" doctrine. The Court of Appeals may use its discretion to correct a forfeited error in a civil case if "(1) there is an error; (2) the error is plain; (3) the error affects substantial rights; and (4) the court determines, after examining the particulars of each case, that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *In re Celotex Corp.*, 124 F.3d 619, 630-31 (4th Cir. 1997).

First, it is not at all clear that the court erred. The defendants have not cited any law demonstrating that the way the district court handled the situation was incorrect. Furthermore, the court's limiting instruction cured any potential prejudice. Appellate courts presume that jurors understand and are able to follow the trial court's instructions. *See United States v. Smith*, 88 F.3d 1350, 1364 (4th Cir. 1996).

We also find that the defendants' substantial rights were not affected. The defendants argue that Mr. Smathers' misconduct deprived them of their right to a fair and complete cross-examination of McCollum. The defendants also argue that the honesty and integrity of the judicial system is impugned by Mr. Smathers' misrepresentations and that no instruction could cure this misconduct. However, as we have already stated, the district court's instruction, which the defendants participated in formulating, removed any prejudice. The inconsistencies on which the defendants state they intended to impeach McCollum's credibility were tangential to the ultimate issue in the case— whether McCollum received his injuries in a fall or at the hands of the defendants. The district court did not think these answers were significant as it found that Mr. Smathers' "lapse of professional conduct did not significantly prejudice the defendants and

does not justify a new trial." (J.A. at 63.) We agree. Because there is no plain error, the district court is affirmed.

### III.

Several medical records were admitted at trial that referenced "assault." The defendants argue that these records could be read as implying that it was the medical provider's opinion that McCollum's injuries were sustained as the result of an assault instead of in a fall. For example, Dr. Albert S. Cytryn's February 22, 1998, letter states, "Mr. McCollum was referred to me after being beaten by the Prince George's Police Department." (J.A. at 1300.)

The defendants filed a motion *in limine* on this issue which was denied by the district court. The defendants also raised this issue in their motion for a new trial. The district court determined that the records were admissible under Rule 803(4) of the Federal Rules of Evidence. We review the district court's decision to admit evidence for abuse of discretion. *See United States v. Robinson*, 275 F.3d 371, 383 (4th Cir. 2002).[1]

Rule 803(4) of the Federal Rules of Evidence provides that the following hearsay statements are not excluded:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Fed. R. Evid. 803(4). "The hearsay exception for statements made for purposes of medical diagnosis or treatment is based on the rationale that the declarant's motive guarantees [the statements'] trustworthiness since treatment will depend on what is reported." *Morgan v. Foretich*, 846 F.2d 941, 949 (4th Cir. 1988) (internal quotations omitted) (alteration in original). "The two-part test set forth for admitting

---

[1]McCollum asserts several reasons why this issue was not preserved for appeal. We find that these assertions are without merit.

these hearsay statements is (1) the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and, (2) the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis." *Id.* (internal quotations and footnote omitted).

The United States Court of Appeals for the Eighth Circuit analyzed this issue in *Roberts v. Hollocher*, 664 F.2d 200 (8th Cir. 1981). Roberts, the plaintiff, was injured in a scuffle with police officers and brought a section 1983 claim against them for excessive force. *See id.* at 202. Roberts sought the admission of a hospital record that read, "Multiple contusions and hematoma, consistent with excessive force." *Id.* at 204. The Eighth Circuit held that statements relating to present or past conditions made to aid diagnosis or treatment are admissible under Rule 803(4). *See id.* The court also stated that "statements regarding the cause of the condition, if pertinent to diagnosis or treatment" are admissible. *Id.* "Statements regarding fault, however," are not admissible. *Id.*

The Eighth Circuit ruled that the district court properly excluded the reference to "excessive force" because the statement was "a conclusion going to fault rather than the cause of the condition and [did] not serve to promote diagnosis or treatment." *Id.* at 205. The court also reasoned that, "While a statement that the injuries resulted from 'force' or 'trauma' might be admissible in some circumstances, the conclusion that 'excessive force' was used was properly excluded here." *Id.*

In another case, the Seventh Circuit ruled that a district court erred in disallowing similar evidence. *See United States v. Pollard*, 790 F.2d 1309, 1313 (7th Cir. 1986), *overruled on other grounds by United States v. Sblendorio*, 830 F.2d 1382, 1393 (7th Cir. 1987). In *Pollard*, the voluntariness of a confession was a key issue in a criminal trial. The defendant, who had a deformed arm containing a steel plate, claimed that before he gave his confession, police officers twisted his arm behind his back, breaking the steel plate. *See id.* at 1311. The medical records contained statements that, "'[t]he patient claims that he was manhandled by the police officers, who handcuffed him and twisted his arm.'" *Id.* at 1312 n.1. If the defendant was in pain from the broken arm during his confession, the court found

that the defendant's pain would bear on the issue of whether he voluntarily confessed. *See id*. at 1314.

Examining Rule 803(4), the Seventh Circuit stated the rule the same way as the Eighth Circuit in *Roberts*, as quoted above, but reached a different conclusion. The court stated:

> The part of these records identifying one of the arresting officers as the person who twisted defendant's arm relates to fault and is clearly inadmissible hearsay unless one of the hearsay rule exceptions in Rule 803 applies. The remaining statements relate to cause (defendant's arm was twisted and placed behind his back) and other matters . . . pertinent to diagnosis and therefore are admissible under Rule 803(4).

*Id*. at 1314. *See also Ramrattan v. Burger King Corp.* 656 F. Supp. 522, 530 (D. Md. 1987) (holding that cause of injury in an automobile accident was admissible, but portion of medical record stating which party ran red light was statement of fault and was inadmissible under Rule 803(4)).

The statements referencing "assault" in the medical records in this case support an inference of both cause and fault. The key issue at trial was not who assaulted McCollum, but whether he received his injuries in an assault or in a fall. The defendants' chief objection is that the jury could have inferred from the medical records that it was the medical provider's opinion that McCollum received his injuries in an assault rather than in a fall. The simplest and most logical inference to be drawn from the "assault" references is that this is what McCollum told his doctors was the cause of his injuries.

Furthermore, in *Pollard*, the Seventh Circuit partially relied on the fact that the defendant's statements to the doctor were consistent with his testimony throughout the case. *See Pollard*, 790 F.2d at 1314. McCollum's testimony is consistent with the statements in the medical records. A natural question from a doctor would be how McCollum received his injuries. A statement as to the cause of injury would be consistent with the purposes of promoting treatment. Assuming his version is truthful, McCollum's natural answer would not be "an incident" or "trauma," but "I was assaulted." McCollum's statements

relate more to cause than fault, are consistent with the purposes of promoting treatment, and are in response to information reasonably requested and relied on by a physician. Under these facts, we cannot say that the district court abused its discretion in admitting these records under Rule 803(4).

IV.

The defendants contend that the district court erred in charging the jury on *respondeat superior*. The district court gave the following charge to the jury:

> You are also instructed that the defendants' employer, Prince George's County is responsible as a matter of law for injuries caused by county employees who violate a plaintiff's state constitutional rights while acting in the scope of their employment. Accordingly, Prince George's County will be liable for any actual damages awarded to the plaintiffs for a violation of the Maryland Constitution.

(J.A. at 875.) Unlike federal law under section 1983, Maryland law allows *respondeat superior* liability for constitutional torts. *See DiPino v. Davis*, 729 A.2d 354, 372 (Md. 1999).

The defendants objected to the charge, arguing that because they had stipulated to the county's liability, the instruction was unnecessary and confusing to the jury. The defendants liken the court's instruction to the mention of insurance in a case. In its denial of the defendants' motion for a new trial, the district court dismissed this objection stating, "The plaintiff sued the County and was entitled to have the jury instructed on the theory of law under which the County would be held liable. This is not a question of statutory indemnification such as those involved in the cases cited by the defendants." (J.A. at 64.)

"We review challenges to jury instructions for abuse of discretion." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 408 (4th Cir. 1999). "The test of the adequacy of jury instructions is whether the jury charge, construed as a whole, adequately states the controlling legal principle without misleading or confusing the jury." *Id.*

We agree with the district court's determination of this issue. First, the district court's statement of the law was correct. *See DiPino*, 729 A.2d at 372. Second, as the district court held, the defendants' analogy with statutory indemnification cases is inapposite. In the statutory indemnification situations cited by the defendants and discussed below, the municipalities were not parties and were not before the jury. *See Lawson v. Trowbridge*, 153 F.3d 368, 370 (7th Cir. 1998); *Larez v. Holcomb*, 16 F.3d 1513, 1518-20 (9th Cir. 1994); *Griffin v. Hilke*, 804 F.2d 1052, 1056-57 (8th Cir. 1986). Here, the county is named as a party and was before the jury. The district court noted that "The County's argument in this regard is no different from that which might be made by any employer who would prefer not to be held accountable for the torts of its employees." (J.A. at 64.) Because the rationale advanced by the defendants does not apply to this case, the district court did not abuse its discretion in giving this instruction.

V.

The jury awarded McCollum more than $4.1 million in total damages. The district court remitted the total award to $1,597,670, significantly reducing the jury's award of non-economic damages and the jury's punitive damages award. The district court reduced the jury's award of non-economic damages from $3.5 million to $1.25 million. The defendants argue that the trial judge erred in not further remitting the compensatory damages award of the jury.[2]

"We review a district court's denial of a Rule 59(a) motion for a new trial based upon the alleged excessiveness of the jury's compensatory damage award for abuse of discretion, giving 'the benefit of every doubt to the judgment of the trial judge.'" *Konkel v. Bob Evans Farms, Inc.*, 165 F.3d 275, 280 (4th Cir. 1999) (quoting *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 438-39 (1996)). Under *Gasperini*, the trial court must apply state law standards in determining whether to grant a new trial *nisi* remittitur, but the appellate court applies the federal abuse of discretion standard of review to a trial judge's decision on both the state and federal law claims. *See Gasperini*, 518 U.S. at 438.

---

[2]The defendants did not argue in their brief that the trial court should have further remitted the punitive damages award.

As to the federal claims, a court should grant a motion for a new trial if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998) (internal quotations omitted). As to the state law claims, a trial judge may grant a new trial on the ground of excessiveness of the verdict if the verdict is grossly excessive, shocks the conscience of the court, is inordinate, outrageously excessive, or even simply excessive. *See Banegura v. Taylor*, 541 A.2d 969, 976 (Md. 1988).

The district court did not abuse its discretion in its application of federal and state principles of remittitur in this case. The district court stated that under both federal and state law standards, McCollum's case supported "at the outermost" a non-economic damages award of $1.25 million and granted McCollum a new trial *nisi* remittitur at that amount. The defendants argue that there was no testimony or evidence relating to ongoing physical or emotional injuries, and no evidence that McCollum's life had been permanently altered because of the incident. However, the district court took those facts into account in its opinion. (J.A. at 66). The district court had before it evidence of the severity of the beating and the full extent of the injuries McCollum suffered. There was evidence before the court of McCollum's numerous surgeries and the loss of his eye. The district court properly weighed these considerations and did not abuse its discretion in refusing to further remit the jury's award of non-economic damages.

*AFFIRMED*