**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Jose Francisco SANCHEZ, Defendant-Appellant.**

**No. 71-1079.**

United States Court of Appeals, Tenth Circuit.

Nov. 10, 1971.

Tosh Suyematsu, Asst. U. S. Atty. (Richard V. Thomas, U. S. Atty., on the brief), for plaintiff-appellee.

Philip White, Cheyenne, Wyo., for defendant-appellant.

Before BREITENSTEIN, McWILLIAMS and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is a direct appeal by Sanchez of his conviction on a charge of unlawful possession of marijuana brought under the Assimilative Crimes Act, 18 U.S.C. § 13, and §§ 35–350 and 35–369 of the Wyoming Statutes, 1957, as amended. More specifically, Sanchez was convicted on a charge of the unlawful possession of narcotic drugs in Yellowstone National Park having been previously convicted of a narcotics violation. On appeal the sole issue is whether the trial court erred in denying Sanchez' motion to suppress the admission into evidence of the marijuana which formed the basis for the prosecution. Accordingly, some reference to the evidence adduced at the hearing on the motion to suppress becomes necessary.

Sanchez and his two companions, Destefani and Traller, while traveling through Yellowstone National Park, parked their van-type vehicle by the side of the road and hiked into a nearby wooded area. At some time during the hike Destefani became separated from the other two and accordingly returned to the van by himself. When Sanchez and Traller did not return soon thereafter, Destefani became concerned that his friends were lost, and he began flagging down passing motorists in an effort to get help. At about this point in time a park official arrived on the scene. Destefani advised this particular official that "I have a couple of buddies and we were out on the trail. My two buddies are still on the hiking trail. They are lost. We need to find them. * * * We have been on LSD. I have been with God all day. Can you take me to the hospital? I need a fix or shot." Destefani was then taken to a ranger station where he again advised other park officials that he, Sanchez and Traller were on an LSD trip and that he was quite concerned about his friends' safety. He also cautioned that "Whomever you send to get them, please warn them that my friends might be dangerous."

One Hassard, a park ranger, was generally apprised of the foregoing information by two rangers who had themselves conversed with Destefani at the station. Acting on the background information thus acquired, Hassard then proceeded to drive to the place where the van was said to have been parked. It was in this general setting that Hassard, after locating the van, noticed two barefoot persons emerge from the woods and walk toward the van. Hassard testified that under the circumstances he was fearful of the individuals and accordingly remained in his car. Using the vehicle's bull horn, he then requested the two to "please move over to the visible side of their vehicle," and advised them that they were suspected of illegal use and possession of drugs. Hassard did not make any statement that the two were under arrest nor did he utter any words that could in themselves be understood to be tantamount to an arrest.

The two initially complied with Hassard's request, although moments later one of them went to the far side of the van where he was momentarily out of the direct view of the ranger. Hassard again requested this person to return to the other side of the van, which he did. This same individual, who was later identified as Sanchez, once again "ducked behind the van * * * appeared to open and shut some doors * * * reached inside and hurled a small brown paper package 50 feet into the woods * * *."

About this time another park ranger, one Hawthorne, arrived on the scene to assist. Hassard then proceeded to retrieve the brown paper package previously thrown by Sanchez. A quick inspection of the contents of the package convinced Hassard that the package contained marijuana, whereupon Hassard "nodded" to Hawthorne, who in turn placed Sanchez and Traller under arrest. Based on this evidence, the trial court found probable cause and accordingly denied Sanchez' motion to suppress. We find no error in this action of the trial court.

**528**

The position advanced here by counsel is that Sanchez was "arrested" when Hassard first asked him and his companion to move to the visible side of the van; that such arrest was without a warrant and was not based on probable cause; and therefore the evidence stemming from his unlawful arrest, i. e., the brown paper sack containing marijuana, was inadmissible and should have been suppressed, citing Murray v. United States, 333 F.2d 409 (10th Cir. 1964).

It is the position of the Government that Sanchez was not arrested until *after* the brown paper sack was retrieved by Ranger Hassard and the substance contained therein tentatively identified as marijuana, at which time, the Government asserts, the park officials clearly had probable cause to make an arrest. At the time Sanchez tried to get rid of the brown paper sack by throwing it into the woods, Sanchez was *not* under arrest, according to the Government, but had been only temporarily detained for limited investigatory purposes. Alternatively, the Government argues that even if it be deemed that Sanchez was arrested when Hassard first requested him to move to the visible side of the van, probable cause existed even at that point in time for Sanchez' arrest.

■■ Our review of the matter convinces us that Ranger Hassard's "request" that Sanchez move around to the visible side of the van did not amount to an arrest. It could well be argued that his request was just that, only a request, and did not even amount to a temporary detention for investigatory purposes. Assuming, however, for the sake of argument, that Hassard's request did amount to a temporary detention for the purpose of making inquiry, the record supports the trial court's finding of probable cause therefor.

■ Temporary detention for limited investigatory purposes, as well as a full blown arrest, is protected by the Fourth Amendment. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, in *Terry* it was observed that a

police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest, and that the test of any governmental invasion of a citizen's personal security is its reasonableness in the light of all the surrounding circumstances.

■ In this same vein it has been held that probable cause to arrest requires something more than probable cause to temporarily detain for the purpose of attempting, for example, some on-the-spot questioning and that, as concerns the latter, brief detention under circumstances that would not justify an arrest is not ipso facto unconstitutional. See such cases as Wilson v. Porter, 361 F.2d 412 (9th Cir. 1966); United States v. Unverzagt, 424 F.2d 396 (8th Cir. 1970); and United States v. Oswald, 441 F.2d 44 (9th Cir. 1971). And in United States v. Harflinger, 436 F.2d 928 (8th Cir. 1970), cert. denied, 402 U.S. 973, 91 S.Ct. 1660, 29 L.Ed.2d 137, it was held that a brief detention based on an officer's reasonable suspicion that criminal activity was afoot is constitutionally permissible for the purposes of a limited inquiry and that incriminating evidence which may come to the officer's attention during such period of detention can become a reasonable basis for effecting a valid arrest.

Under the authorities above cited, our examination of the record convinces us that Hassard's request that Sanchez and his companion move to the visible side of the van does not equate with an arrest, and under the circumstances was at most a temporary detention for investigatory purposes. It is arguable that Hassard had probable cause to arrest Sanchez even before the latter attempted to get rid of the marijuana. However, we need not here decide that matter. Most certainly Hassard did have probable cause to temporarily detain Sanchez in the manner he did by simply requesting him to move to the visible side of the van.

We do not deem it necessary to make a long recital of the facts and circumstances which make out a case of probable cause for Hassard's actions. However, we do note that Hassard had been informed that Destefani had volunteered that he and his two friends, all of whom according to Destefani were on drugs, had parked their van by the side of the road and had gone for a hike in the woods; that his two friends were lost and needed help; and that his two friends "might be dangerous." It was a fact that Destefani was under the influence of some drug, and it would certainly be a reasonable inference that his two companions in this venture might well be in similar condition. The fact that Destefani's statements to the ranger were in a sense against his own interests is one reason for giving credence to his statements. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

Continuing then with our analysis of the record, we do not believe it to be an unreasonable inference that one under the influence of drugs may well still be in possession of some drugs. Acting then on this information, Hassard found the van mentioned by Destefani and soon saw two persons (not one or three, but the number given by Destefani) emerge from the woods and approach the van. So, Hassard had, to a limited degree at least, verified the information related by Destefani to the rangers. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

Under the circumstances above summarized, we are disinclined to hold that Hassard acted in violation of the United States Constitution in merely asking Sanchez to step around to the visible side of the van, and we conclude that Hassard indeed had probable cause for doing just as he did. Such being the case, when Sanchez thereafter voluntarily revealed the brown paper sack by tossing it some 50 feet away from the van and the sack was then retrieved and determined to contain marijuana, a lawful arrest could then be made based on reasonable cause to believe that a felony was being committed in his presence. Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960).

Sanchez makes minor complaint about the denial of his motion for a transcript of his preliminary examination before the United States Commissioner. Counsel concedes, however, that any error in this regard is only harmless error. Such being the case, we need not concern ourselves with the propriety of such action by the trial court.

Judgment affirmed.