UNITED STATES of America,
Plaintiff-Appellee,

v.

Larry James MIRELES,
Defendant-Appellant.

No. 78–1419.

United States Court of Appeals,
Tenth Circuit.

Submitted Aug. 9, 1978.

Decided Aug. 30, 1978.

Certiorari Denied Oct. 30, 1978.
See 99 S.Ct. 332.

R. E. Thompson, U. S. Atty. and Richard J. Smith, Asst. U. S. Atty., Albuquerque, N. M., for plaintiff-appellee.

William W. Deaton, Jr., Federal Public Defender, Albuquerque, N. M., for defendant-appellant.

Before LEWIS, McWILLIAMS and LOGAN, Circuit Judges.

McWILLIAMS, Circuit Judge.

In a trial to the court Larry James Mireles was adjudged guilty of possessing an unregistered sawed-off shotgun in violation of 26 U.S.C. §§ 5861(d) and 5871 and was sentenced to eight years imprisonment. Prior to trial Mireles filed a motion to suppress the use of the sawed-off shotgun on the ground that it was seized in an unlawful search of his person. After an evidentiary hearing, the trial court denied the motion to suppress, holding that the officer

who took the shotgun from Mireles had probable cause for his action.

On appeal it is not disputed that Mireles unlawfully possessed the unregistered sawed-off shotgun. Rather, the only matter urged as ground for reversal is the trial court's order denying Mireles' motion to suppress. It is Mireles' position that the warrantless seizure of the shotgun from his person violated his Fourth Amendment rights. It is the Government's position that the trial judge did not err in concluding that the officer who seized the shotgun acted on probable cause. In such circumstance disposition of the appeal necessarily turns on the precise facts and circumstances surrounding the seizure of the shotgun. We have reviewed the record and conclude that the trial court's finding that the officer had probable cause to seize the weapon is supported by the record. It is on this basis that we affirm.

Edward Pacheco was a four-year veteran of the Bernalillo County Sheriff's Department. During those four years he had been assigned to patrol the South Valley area of Albuquerque, New Mexico. Pacheco knew the neighborhood, and in particular had learned what to expect at the Rio Bravo Lounge, namely, violence in a variety of forms, including fights, stabbings and indeed shootings.

During the night in question, January 14, 1978, the Sheriff's Department received two calls from the Rio Bravo Lounge concerning two fights, one occurring inside the bar and the other in the parking area. Pacheco did not respond to either of these calls, although he knew of both. At about 8:00 p. m. on the same evening Pacheco either responded to a third call from the Rio Bravo Lounge, or he came to the lounge on routine patrol. The record in this regard is unclear. In either event Pacheco, in uniform, and in a marked car, pulled into the Rio Bravo parking lot and met the proprietor, one Reuben Joe Lopez, who stated that he had just been assaulted by a customer.

It was in this setting that two men approached Pacheco and Lopez, one of whom later turned out to be Mireles. The two newcomers each wore long trench coats and stocking caps, and, in Pacheco's opinion, "they were sort of overdressed for that type of weather that night." As the pair neared the parking lot Pacheco looked directly into Mireles' eyes, and the latter responded in a "surprised manner." The two strangers then separated, Mireles continuing into the bar and his companion turning towards the sidewalk. The two, however, then met at the entrance to the bar and as they turned to enter the bar both Lopez and Pacheco saw something more. Behind Mireles' right shoulder, under his trench coat, was a noticeable and suspicious bulge or lump.

At first both Lopez and Pacheco thought the bulge or lump was caused by a bottle of liquor that was being secreted into the bar.* In any event, both Lopez and Pacheco followed the two into the bar where Mireles tried "to lose himself in the crowd." Pacheco and Lopez both approached Mireles from the rear, intending to question him. In passing, Pacheco felt the bulge in Mireles' trench coat, and, from this act of touching, Pacheco testified that he was immediately convinced that Mireles was carrying a concealed weapon of some sort. Pacheco then opened Mireles' trench coat and "saw it, and . . grabbed it and . . held on for dear life." A sawed-off shotgun hung from Mireles' neck by a sling fashioned from a nylon stocking. Pacheco, with some help from Lopez and others, succeeded in disarming Mireles. Underneath his cap Mireles was wearing a nylon stocking which was cut to fit over his face. He was also wearing a pair of white gloves. Mireles was then placed under arrest on a state robbery charge. When it was later ascertained that the shotgun seized from Mireles was not registered to him, he was later charged by indictment in the present proceeding with violation of 26 U.S.C. §§ 5861(d) and 5871.

---

* Under New Mexico state law it is unlawful to drink on the premises of any dispenser any alcoholic liquors obtained elsewhere. New Mexico Stat.Ann. (1953), 46–10–16.

When later questioned Mireles stated that he was carrying the sawed-off shotgun for his own protection. However, he declined to identify the person from whom he had acquired the gun.

In our view the incident at the Rio Bravo Lounge wherein a sawed-off shotgun was taken from Mireles' person comes within the rule of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry* the Supreme Court spoke as follows:

> We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken. 392 U.S. at 30, 88 S.Ct. at 1884.

The Supreme Court also stated in *Terry* that:

> The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others is in danger. 392 U.S. at 27, 88 S.Ct. at 1883.

In accord with *Terry,* we held in *United States v. Sanchez,* 450 F.2d 525 (10th Cir. 1971) that even though a police officer may not have probable cause to make an arrest, he may nonetheless in appropriate circumstances and in an appropriate manner approach a person for the purpose of investigating possible criminal behavior. In *Sanchez* we stated that the test of any governmental invasion of a citizen's personal security is its reasonableness in the light of all the surrounding circumstances. We believe that in the instant case Pacheco acted reasonably in the light of the surrounding facts and circumstances.

No one would suggest that under the described circumstances Pacheco should have ignored what he had seen and simply walked away from the entire scene. It is suggested, however, that Pacheco should have handled the situation in a different manner. Specifically, it is suggested that Pacheco should have engaged Mireles in some preliminary conversation before he touched, from the outside, the lump in Mireles' trench coat. With such suggestion we do not agree, nor do we believe that *Terry* requires such. The Supreme Court in *Terry* stated that the reasonableness of any particular search and seizure must be assessed in light of the particular circumstances against the standard of whether a man of reasonable caution is warranted in believing that the action taken was appropriate. Reasonableness, then, cannot be determined through the use of a set formula. It depends upon the total picture. And "practical considerations of everyday life" must prevail. *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1948). See also *United States v. Romero,* 484 F.2d 1324 (10th Cir. 1973), which bears a considerable factual resemblance to the instant case.

In sum, we agree with the trial court that under the circumstances Mireles' Fourth Amendment rights were not violated by Deputy Sheriff Pacheco.

Judgment affirmed.