UNITED STATES of America,
Plaintiff-Appellee,

v.

James WHEELER, Defendant-Appellant.

No. 85–2235.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 10, 1986.

Decided Aug. 22, 1986.

Irwin Levin, Indianapolis, Ind., for defendant-appellant.

Bruce D. Brattain, U.S. Attys. Office, Hammond, Ind., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, and BAUER and POSNER, Circuit Judges.

CUMMINGS, Chief Judge.

James Wheeler appeals his conviction for unlawful possession of a firearm, 18 U.S.C. app. II section 1202(a)(1). For the reasons discussed below, we affirm.

## I. STATEMENT OF THE FACTS AND CASE

On July 27, 1984, James Wheeler was charged with two counts both relating to his possession and receipt, as a convicted felon, of a firearm in violation of 18 U.S.C. app. II § 1202(a)(1) and 18 U.S.C. § 922 (a)(1). He entered a not guilty plea on February 12, 1985. On April 18, 1985, the defendant made a motion to supress the firearm, arguing that it was taken as a result of an illegal search and seizure. After a hearing the district court denied the motion on April 24, 1985. The jury re-

turned a guilty verdict as to both counts on May 21, 1985, and defendant was later sentenced to 5 years on Count I; Count II was dismissed by the trial judge on motion of the Government. Defendant brings this appeal pursuant to 28 U.S.C. § 1291.

On July 13, 1983, off-duty police officer Arpad Hayes was working as a security officer at the Duchess Lounge in Hammond, Indiana. That evening 6 to 7 men entered the bar, some of whom Hayes recognized as being members of the Outlaw Motorcycle Club. None was wearing the Outlaw "colors" but some had clothing marked "Outlaw Motorcycle Club." Hayes observed that two of the men stayed by the door, two walked alongside the bar, and the remaining two or three went to the opposite end of the bar. Hayes also noticed bulges in several of the men's clothing and he suspected that they were weapons. Because another motorcycle club hostile to the Outlaws, the Invaders, frequented the Duchess Lounge, Hayes continued to watch the group for about 5 minutes. Fearing trouble, he called the Gary Police Department for assistance.

Shortly thereafter 5 or 6 officers arrived at the scene, at least one of whom had a shotgun. They entered the dimly lit bar where approximately 30 patrons were drinking and talking. There were no longer any men near the door or walking along the length of the bar. Hayes pointed to some of the patrons (including defendant) and told Sergeant Petro he thought some of them were armed.

Wheeler was at the opposite end of the bar from the door with his back to the approaching police officers. Petro approached Wheeler and ordered him to turn around, put his drink down, and place his hands against the wall. As the defendant complied, Petro noticed a gun in his waistband and took possession of it. He asked the defendant about a permit and the defendant replied that he had no permit because he was a convicted felon.

Defendant raises five issues on appeal. First, he argues that in disposing of the motion to suppress the trial judge erroneously placed the burden upon defendant, and second that there was no particularized reasonable suspicion that he was going to engage in criminal activity so as to warrant a *Terry* stop and frisk.[1] Third, he contends that by failing to object to the introduction of inadmissible evidence his counsel was ineffective. Fourth, a comment by the prosecutor regarding the defendant's ability to bring a witness onto the stand impermissibly shifted the burden of proof. And fifth, the court erred in failing to tender to the jury a justification defense instruction.

## II. *TERRY* STOP AND FRISK

Wheeler claims that the trial court erred in denying his motion to suppress evidence illegally seized. He claims that the trial court improperly placed on him the burden of showing that the seizure of the gun was illegal. Defendant further argues that the government failed to meet its burden of showing reasonable, articulable facts to justify the stop and search.

As the government concedes (Br. 11), the trial court was incorrect in placing the burden on the defendant. When the police initiate a search and seizure, the government bears the burden of establishing by a preponderance of the evidence that the search or seizure did not violate the Fourth Amendment. *United States v. Longmire*, 761 F.2d 411, 418 (7th Cir.1985). The burden is not appropriate for the defendant to carry because, *inter alia*, "[t]he facts allegedly constituting the reasonable suspicion are peculiarly within the knowledge and control of the police." *Id.* at 417. However, even with the burden properly shouldered by the government, its seizure of the gun and arrest of defendant were nevertheless justified.

Before the *Terry* exception to the probable cause requirement applies, there must be reasonable suspicion to believe that the individual stopped has committed or is about to commit a crime. *Terry v.*

1. So named from *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

*Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889. Furthermore, in order to frisk an individual stopped there must be reasonable suspicion that he or she is armed and presents a danger to the officer or community. *Id.* at 27, 88 S.Ct. at 1883; *Sibron v. New York,* 392 U.S. 40, 64–66, 88 S.Ct. 1889, 1903–04, 20 L.Ed.2d 917. *Terry* does not permit a patdown for weapons unless there is a reasonable belief that a particular individual is armed and dangerous. *Ybarra v. Illinois,* 444 U.S. 85, 91, 92–93, 100 S.Ct. 338, 342–43, 62 L.Ed.2d 238; *United States v. Cortez,* 449 U.S. 411. When—as here—the suspected criminal activity reflects a violent nature, the possibility that the individual is armed and dangerous is increased. *Terry,* 392 U.S. at 33, 88 S.Ct. at 1886 (Harlan, J., concurring) (daytime burglary likely necessitates the use of a weapon). But simply because someone is in the company of others who themselves are suspected of criminal activity does not alone give rise to a *Terry* stop and frisk justification because the probable cause must be "particularized with respect to that person." *Ybarra,* 444 U.S. at 91, 100 S.Ct. at 342; *United States v. DiRe,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210.

■ The facts of this case suffice to show that, given the information provided by Hayes, arresting officer Petro had a reasonable suspicion that Wheeler was armed and dangerous. Although it is clear that knowledge of one officer may be imputed to another officer, *Williams v. United States,* 308 F.2d 326, 327 (D.C.Cir.1962), that information must be communicated in sufficient detail. *United States ex rel. Kirby v. Sturges,* 510 F.2d 397 (7th Cir. 1975), certiorari denied, 421 U.S. 1016, 95 S.Ct. 2424, 44 L.Ed.2d 685; *Evergreen Helicopters, Inc. v. NLRB,* 564 F.2d 1293 (9th Cir.1977). *United States v. Hensley,* 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604, requires that (1) the officer act in objective reliance on the information; (2) the police officer who provided the information have had reasonable suspicion justifying a stop or frisk; and (3) the stop or frisk be no more intrusive than would have been permitted for the initial officer. For purposes

of this case, the district court had to determine whether Officer Hayes had a reasonable suspicion that Wheeler himself was armed and dangerous and whether that information was sufficiently communicated to Officer Petro. Judge Moody so ruled in an opinion denying the motion to suppress (reproduced in defendant's Appendix).

The facts available to Hayes can be summarized as follows:

(1) A group of six or seven men entered the bar together;

(2) the group initially behaved in a manner suggesting that they were "covering" the entrance;

(3) some were recognized as Outlaw gang members;

(4) some members of the group were wearing clothing with "Outlaw Motorcycle Club" printed on it;

(5) some of the men had bulges in their clothing indicating the possibility of weapons;

(6) the Invaders, who frequented the Duchess Lounge, were hostile to the Outlaws, and a fight between the two gangs seemed likely.

According to the record, the defendant was not identified as wearing Outlaw insignia or as a member of the Outlaws, but was one of the suspect group whose weapons bulged from their clothing. Hayes of course knew that Wheeler was a member of the group that entered the bar and aroused his fear of a fight. The question before the district court was whether an inference that Wheeler was armed and dangerous because he entered a bar with a group of men who are Outlaws, seemingly armed, and behaving suspiciously was reasonable. It is significant that the behavior of the group as a whole was suspicious and that led Hayes to believe they were about to commit a crime involving violence. He feared there was to be a violent confrontation between the Outlaws and the Invaders. It is not just that Wheeler happened to be with people whom the police independently suspected of criminal behavior, the group itself (of which Wheeler was a member)

was behaving suspiciously. Although it was not necessary for every member of the group to wear Outlaw insignia for Hayes to have reasonably inferred that the others were somehow affiliated with the Outlaw members, it was still an inference that the government had to support. Likewise, whether the fact that some were possibly armed, coupled with the suspicion of a potential violent encounter, could lead to a reasonable inference that they were all possibly armed and dangerous. These burdens were on the Government but, as noted, were erroneously placed on defendant to disprove.

The defendant argues that although Officer Hayes may have had sufficient suspicion to stop and frisk him, Sergeant Petro did not. The defendant contends that Hayes failed to indicate specifically to Petro that defendant was a person armed or a member of the group of six or seven Outlaws. Rather, Wheeler alleges that Hayes only pointed generally toward the end of the bar where Wheeler was standing. The government contends that Hayes did identify Wheeler as armed and a member of the Outlaws. Specific identification was necessary to complete the receiving officer's justifying reasonable suspicion. *U.S. v. Mireles*, 583 F.2d 1115 (10th Cir.1978); *Evergreen Helicopters*, 564 F.2d 1293. We have carefully reviewed the suppression hearing record and find that the district court could properly find that Hayes passed sufficient information to Petro to warrant his approaching defendant. The government satisfied the burden imposed upon it by *Ybarra* so that the district court's erroneous placement of the burden upon defendant does not require a remand. The record shows that there was sufficient particularized reason for Petro to search the defendant when he received information from Hayes that defendant was a member of the suspicious group. See *Llaguno v. Mingey*, 739 F.2d 1186, 1191 (7th Cir.1984).

■ The defendant argues that *Terry* does not apply because Officer Petro did not identify himself as a police officer nor initiate any inquiry. The defendant cites *Terry* as requiring that the police officer identify himself or herself as such and ask questions before conducting a frisk. However, in *Adams v. Williams*, 407 U.S. 143, the Supreme Court validated such a frisk without that requirement. In *Adams*, the police officer received a tip that an individual was dealing in narcotics and carrying a gun in his waistband. The police officer approached the car in which the person was sitting. He asked Adams to exit the car; instead Adams rolled down the window. The police officer then, without asking any questions, reached into the car and pulled the gun from Adams' waistband. *Id.* at 145. Indeed in *Terry*, although the police officer did identify himself, after he asked the suspects' names they mumbled something; he then immediately spun one around and frisked him. 392 U.S. at 7, 88 S.Ct. 1872. Thus, if at the time of the stop a police officer has reasonable suspicion that an individual is armed and dangerous, he or she may immediately frisk the suspect. It is not necessary for the police officer to ask a question first and possibly "take the risk that the answer might be a bullet." *Id.* at 33 (Harlan, J., concurring).

A *Terry* stop (which typically precedes a frisk) is still limited to "maintaining the status quo" for purposes of investigation. When a police officer frisks first and asks questions later, that order of investigation must be a reasonable precaution for the officer's safety. *United States v. Worthington*, 544 F.2d 1275 (5th Cir.1977), certiorari denied, 434 U.S. 817, 98 S.Ct. 55, 54 L.Ed.2d 72; *United States v. Diggs*, 173 U.S.App.D.C. 95, 522 F.2d 1310 (D.C.Cir. 1975), certiorari denied *sub nom. United States v. Floyd*, 429 U.S. 852, 97 S.Ct. 144, 50 L.Ed.2d 127. If police officers use unnecessary force to effectuate a stop, they risk "arresting" the individual without the requisite probable cause. *United States v. Strickler*, 490 F.2d 378 (9th Cir.1974). In this situation, the police officers arriving at the Duchess Lounge feared a violent confrontation between rival motorcycle clubs. They approached individuals they suspected carried guns and were possibly violent.

Given these circumstances, Petro was justified in first discovering whether the individual he was investigating was armed.[2] At that time he was suspicious that defendant was one of a group about to commit a crime. When he saw the handgun sticking out of defendant's waistband and learned that defendant was a convicted felon without a gun permit, Petro surely had probable cause to seize the gun and arrest defendant.

In his opinion denying the motion to suppress the gun, the trial judge discussed the pertinent authorities such as *Ybarra, Terry* and *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497. He ruled that the high standard of probable cause enunciated in *Ybarra* was met here for the following reasons (defendant's App. 5–6):

> Each of the *Ybarra* factors was present in the Duchess Lounge. Hayes recognized the Outlaw Club and identified Wheeler as a member of that gang. He knew of the past violence between the Outlaws and the Invaders, and appreciated that the Outlaws' presence in Invader territory could well precipitate a violent incident. Such an incident would transgress state or federal law. Hayes observed bulges on the defendant and his colleagues which the off-duty policeman reasonably believed were weapons. Hayes noted that the gang members behaved differently than normal patrons, i.e. they positioned two members at the Lounge's door. Hayes communicated these observations to his on-duty co-workers, giving Sergeant Petro an "articulable suspicion" sufficient to justify Wheeler's seizure.

These facts support the district court's ruling on the motion to suppress even though the court had initially placed the burden of proving the illegality of the seizure on the defendant, citing *United States v. Tierney,* 448 F.2d 37 (9th Cir.1971). Therefore there is no need for a remand to reconsider the motion to suppress.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

The defendant also claims that he was denied effective assistance of counsel in violation of the Sixth Amendment. Specifically, the defendant points to two failings of his trial counsel, which he claims would have resulted in the gun being kept out of evidence. Without a gun the government has no case, *ergo* reversible error.

The first failing raised by defendant is his counsel's failure to object to the admission of the gun on a chain of custody ground. Officer Farmer scratched his initials into the gun but did not testify as to its authenticity. At trial Petro testified that the gun looked like the gun he took from the defendant, there were markings on the gun of his partner's (Farmer's) initials and badge number, and he saw Farmer put the markings there. The second failing asserted by the defendant is the defense counsel's stipulation to the admissibility of a property receipt prepared by Farmer.

 These arguments relate to the chain of custody of the gun and, according to the defendant, warranted an obvious hearsay objection. However, in order to demonstrate a Sixth Amendment violation the defendant must show that the defense counsel's performance was so deficient as to deny the defendant a fair trial. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Even if his attorney erred in failing to object,[3] the defendant

---

**2.** The government offers a plain view justification for the seizure of the gun. It argues that after Wheeler complied with the order to put down his drink and place his hands on the wall, Petro saw the gun. However, to argue that the gun was not a fruit of the frisk is to argue semantics. Petro would not have spied the gun absent his command to Wheeler to put his hands up on the wall—the stance in which he was to be frisked. Thus the gun was in effect seized pursuant to the *Terry* frisk. See *Sibron,* 392 U.S. at 67, 88 S.Ct. at 1904 (a search incident to lawful arrest may not precede the arrest and serve as part of its justification).

**3.** Such a decision could have been a valid trial strategy. If defense counsel was aware that the government would have had no problem in obtaining Officer Farmer to provide the appropri-

makes a leap in logic to assume that the gun could not have been brought into evidence.

▮ Whether the chain of custody has been established for a piece of evidence goes to its weight rather than its admissibility. *United States v. Shackleford,* 738 F.2d 776 (7th Cir.1984); *United States v. Lopez,* 758 F.2d 1517 (11th Cir.1985), certiorari denied, —— U.S. ——, 106 S.Ct. 789, 88 L.Ed.2d 767. A trial court's decision to admit real evidence will not be reversed unless it has abused its discretion. *United States v. Jefferson,* 714 F.2d 689, 696 (7th Cir.1983). Significant here is that Wheeler does not allege that the gun is not the one taken from him or that it has been altered in any way. *Louis Vuitton S.A. v. Spencer Handbags Corp.,* 765 F.2d 966 (2d Cir. 1985). Without such an allegation Petro's testimony that the gun looks like the one he took from Wheeler and that he saw Farmer mark the gun is sufficient to show that the trial court did not abuse its discretion in admitting it.[4] Absent any showing that but for the defense counsel's failure to object the gun would not have been admitted, the defendant has not shown the requisite prejudice. See *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064–65.

## IV. PROSECUTORIAL MISCONDUCT

The third point of error raised by the defendant is prosecutorial misconduct. The prosecutor commented during closing argument that "if the defense had wanted to bring in a witness from Smith and Wesson [the gun manufacturer] they had the right, just as we did, to subpoena" such a witness. The defendant claims that this constitutes a violation of due process. The government argues (1) the invited response doctrine and (2) any error was harmless.

▮ The defendant correctly argues that the prosecutor's comments impermissibly shifted the burden of proof. The statements were made regarding whether the gun had been transported interstate, an element of the charge under 18 U.S.C. App. II section 1202(a)(1) that the government must prove beyond a reasonable doubt. The prosecutor may not make statements that effectively distort the burden of proving elements of an offense. *United States v. Vargas,* 583 F.2d 380, 386 (7th Cir.1978). This distortion occurs when, as here, "the prosecutor states that witnesses who allegedly would support the government's case but were never called to the witness stand could just as easily have been called by defendant." *United States v. Pollard,* 790 F.2d 1309, 1314 (7th Cir.1986). The government is required to prove each and every element of its case beyond a reasonable doubt. Encompassed within this burden is a requirement that the government (not the defendant) produce the witnesses who support its case.

The government responds that there is no error under the "invited response" doctrine. The government misapprehends the doctrine. The invited response doctrine relates only to whether the unwarranted comment constitutes reversible error. *Pollard,* 790 F.2d at 1314; *United States v. Mazzone,* 782 F.2d 757, 763 (7th Cir.1986). The invited response doctrine only recognizes that a prosecutor's response to comments of the defense counsel may mitigate somewhat its negative impact on the jury. Placed in context, the error loses some of its harmful effect.

The prosecutor's comments in this case were in response to the defense counsel's closing statement that the prosecution had

---

ate foundation for the evidence, defense counsel could have recognized the futility of raising such minor trial delay tactics.

**4.** It is very likely that the business records exception to hearsay applies, Federal Rules of Evidence 803(6), because these marks were made as part of regular police business activity. See *United States v. Kasvin,* 757 F.2d 887 (7th Cir.1985), certiorari denied, —— U.S. ——, 106 S.Ct. 592, 88 L.Ed.2d 572; *United States v. Mendel,* 746 F.2d 155 (2d Cir.1984), certiorari denied, 469 U.S. 1213, 105 S.Ct. 1184, 84 L.Ed.2d 331. Petro's testimony that he saw Farmer mark his initials on the gun would provide the requisite knowledge. *United States v. Wables,* 731 F.2d 440 (7th Cir.1984). This same exception would apply to the receipt admitted.

failed to call a witness to testify about where the gun was made. Although improper, the context of the comments does mitigate somewhat the prejudicial impact. *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 1044–45, 84 L.Ed.2d 1; *United States v. Peco*, 784 F.2d 798, 805–06 (7th Cir.1986), certiorari denied *sub nom. Hoffman v. United States*, —— U.S. ——, 106 S.Ct. 2281, 90 L.Ed.2d 723. More importantly, the statement was made only once and after an objection by the defendant the court immediately instructed the jury to disregard the statement and struck it from the record. See *United States v. Pizarro*, 756 F.2d 579 (7th Cir.1985), certiorari denied, —— U.S. ——, 105 S.Ct. 2686, 86 L.Ed.2d 703. Additionally, there was evidence on the record that the gun possessed by the defendant in Indiana was originally purchased by a gun dealer in Newport News, Virginia. This and the prompt intervention and admonishment on the part of the judge render the error harmless. The defendant has not met his burden of showing beyond a reasonable doubt that in the absence of the remarks the jury would have returned a not guilty verdict. *United States v. Hastings*, 461 U.S. 499, 510, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96.

## V. JUSTIFICATION DEFENSE

The defendant's final contention is that the district court erred in failing to tender a self-defense instruction to the jury. Defendant argues that the following facts support the need for such an instruction. According to the defendant, on the night in question he received information that a fellow Outlaw member was going to be "ambushed" by the Invaders at the Duchess Lounge. Wheeler then picked up a handgun at a friend's house and drove with friends to the Duchess Lounge to protect his friend.

At least one circuit has approved the use of a justification defense on charges of a felon unlawfully possessing a firearm in violation of 18 U.S.C. App. II section 1202(a)(1). See *United States v. Gant*, 691 F.2d 1159 (5th Cir.1982). The rationale is that the right to defend oneself from a deadly attack is fundamental. *United States v. Panter*, 688 F.2d 268, 271 (5th Cir.1982). Wheeler argues that because he was genuinely concerned for the safety of his friend and he was in a situation where it was unreasonable not to be armed, he was at least entitled to have the jury consider the defense.

But to be entitled to the defense the defendant must first demonstrate that he: (1) was under unlawful and present threat of death or serious bodily injury; (2) did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and (4) a direct causal relationship between the criminal action and the avoidance of the threatened harm. *Gant*, 691 F.2d at 1162–63. In other words, a felon may not arm himself or herself and go looking for trouble. That is precisely what happened here. If the defendant truly believed or had knowledge that members of the Invaders would be waiting at the Duchess Lounge with a machine gun (as he claims), a quick call to the police would have better ensured his friend's safety. We therefore agree with the district court that as a matter of law the defendant was not entitled to such a defense instruction.

The judgment of conviction is affirmed.